UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------

GREGORY HASKIN and STEPHANIE
HASKIN,

      Plaintiffs,

    v.

UNITED STATES OF AMERICA,
ANDIFRED REALTY CORP. and PRECISE
DETAILING, LLC,

       Defendants.

------------------------------------------------------------

**MEMORANDUM & ORDER**

10-CV-5089 (MKB)

MARGO K. BRODIE, United States District Judge:

  Plaintiffs Gregory Haskin and Stephanie Haskin, husband and wife, bring the above-captioned action against Defendant the United States of America (the "United States") for violation of the Federal Tort Claims Act ("FTCA"), and against Defendants Andifred Realty Corp. ("Andifred") and Precise Detailing L.L.C. ("Precise") for state law negligence claims. Plaintiffs seek damages for injuries allegedly sustained by Gregory Haskin as a result of a slip-and-fall on the sidewalk in front of the Glen Head Post Office ("Post Office") on December 21, 2009. The United States moved to dismiss the Complaint pursuant to Rule 12(b)(1) of Federal Rules of Civil Procedure for lack of subject matter jurisdiction or, in the alternative, for summary judgment pursuant to Rule 56 of Federal Rules of Civil Procedure. Andifred and Precise both moved for summary judgment pursuant to Rule 56. The Court heard oral argument on July 19, 2013. For the reasons discussed below, the United States' motion to dismiss for lack of subject matter jurisdiction is granted. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law negligence claims against Andifred and Precise.

## I.  Background

Defendant Andifred owns a business complex at 240 Glen Head Road in Glen Head,

New York.  (Pls. Opp'n 1.)  Andifred leases office space to various businesses including the Post

Office.  (U.S. Def.'s 56.1 ¶ 2.)  The Post Office is open to the public Monday through Saturday

beginning at 9:00 a.m.  (*Id.* at ¶ 3.)  However, a Post Office employee opens the front door to the

Post Office at 5:30 a.m. to allow customers access to their post office boxes.  (*Id.*)

### a.  Contract with Precise

In November 2009, the Post Office entered into a contract with Anthony Petito ("Petito")

on behalf of Precise to perform snow and ice removal services on the Post Office's front and

back parking lots, sidewalks and an alleyway leading to the back parking lot (the "covered

area").  (Schumacher Decl. Ex. F ("Contract") at 1; Petito Aff. ¶ 3.)  After soliciting bids from

three independent contractors, the United States Postal Service (the "USPS") awarded the

contract to Precise, a company that performed "[s]nowplowing" and "auto detailing."  (Petito

Dep. 6:23–25; Washington Dep. 37:13–38:7.)  A contracting agent for the USPS signed the

contract for snow and ice removal and sent it to Precise.  (Contract at 1; Washington Dep. 38:8–

10, 41:5–10.)  Precise never signed the contract but acknowledged receiving the contract and

began performing snow and ice removal services in accordance with the terms and conditions of

the contract.  (Contract at 1; Washington Dep. 42:23–43:9.)

Pursuant to the contract, Precise was required to provide snow and ice removal services

for the covered area of the Post Office beginning November 15, 2009, and continuing through

November 14, 2010.  (Contract at 1.)  The contract states:

> SNOW IS TO BE AUTOMATICALLY PLOWED WITHOUT
> NOTIFICATION WHEN SNOW REACHES TWO (2) INCHES.
> SUPPLIER MAY BE CALLED EVEN IF THE SNOWFALL IS
> LOWER THAN TWO INCHES.  RESPONSE TIME WHEN

CALLED BY USPS IS ONE HOUR AND WHEN NOT CALLED (AUTOMATIC RESPONSE (2) TWO INCHES) IS TWO HOURS.

(*Id*. at 2.)  Precise could also be called back to remove snow from an area it missed in the initial clearing of snow.  (*Id*.)

To carry out its duties and responsibilities, Precise was required to furnish "all labor, materials, supervision and equipment necessary" to remove snow and ice, and Precise had to salt or sand each time it removed snow or ice.  (*Id*. at 1–2.)  In addition, Precise was required to purchase employers' liability insurance and general public liability insurance.  (*Id*. at 12–13.) Precise also agreed to "indemnify [the USPS] and its officers, agents, representatives, and employees from all claims, losses, damage, actions, causes of action, expenses, and/or liability resulting from, brought for, or on account of any personal injury or property damage received or sustained by any person, persons or property growing out of, occurring, or attributable to any work performed under or related to this contract, resulting in whole or in part from negligent acts or omissions of the . . . subcontractor."[1]  (*Id*. at 5.)

### b.  Weekend of December 19 and 20, 2009

Between Saturday, December 19, 2009 and Sunday, December 20, 2009, approximately 15 inches of snow fell outside the Post Office.  (U.S. Def.'s 56.1 ¶ 8.)  At approximately 1:00 a.m. on Sunday, December 20, 2009, Precise removed snow from the covered area and applied "calcium chloride (a snow and ice melt chemical)."  (U.S. Def.'s 56.1 ¶ 9; Petito Aff. ¶ 3.) Precise returned to the Post Office at approximately 6:00 a.m. and again at approximately 4:00 or

---

[1]  Plaintiffs assert that the Post Office employees had a joint duty, along with Precise, to perform snow and ice removal when the snowfall was less than two inches.  (Pls. Opp'n 8–9.) Plaintiffs also assert that pursuant to custom, if any Post Office employees observed ice on the sidewalk, they were expected to use the Post Office's shovels and ice melt chemicals to correct the dangerous condition.  (Pls 56.1 ¶¶ 38, 43.)

5:00 p.m. to remove more snow and ice from the covered area.  (U.S. Def.'s 56.1 ¶¶ 10–11; Petito Aff. ¶ 3.)

### c.  Monday, December 21, 2009

On Monday, December 21, 2009, at approximately 5:00 a.m., Precise applied ice melt chemicals to the covered area.[2]  (U.S. Def.'s 56.1 ¶¶ 12–13; Pls 56.1 ¶¶ 12–14; Petito Aff. ¶ 3.) On the morning of Monday, December 21, 2009, postal employee Fred Nizzari was scheduled to arrive at the Post Office at 5:15 a.m. and open the front doors of the Post Office at 5:30 a.m. (U.S. Def.'s 56.1 ¶¶ 34–35.)  At approximately 7:30 a.m., Plaintiffs assert that Nizzari exited the main entrance of the Post Office to collect mail from the mailbox in front of the Post Office and walked down the sidewalk where Gregory Haskin later slipped and fell.[3]  (*Id.* ¶ 37.)

At approximately 8:00 a.m., Gregory Haskin went to the Post Office to mail Christmas cards by leaving them in the mail slot located in the lobby of the Post Office.  (U.S. Def.'s 56.1 ¶ 21.)  While walking towards the front door, Gregory Haskin slipped and fell on a patch of ice on the sidewalk in front of the Post Office, which Plaintiffs claim was approximately five feet wide.  (*Id.* ¶ 22; Pls. 56.1 ¶ 50.)  According to Gregory Haskin, he did not see the ice before he slipped and fell.  (U.S. Def.'s 56.1 ¶ 26.)  He also did not see any ice melting substances on the

---

[2]  Plaintiffs argue that Precise could not have applied ice melt chemicals to the sidewalk at 5:00 a.m. because if Precise "had used calcium chloride only 2 1/2 hours prior to the accident, the ice subject ice condition [sic] could not have occurred under the prevailing temperatures." (Pls. 56.1 ¶ 12.)  Plaintiffs rely on the report of an expert witness to assert that ice could not have formed if Precise had applied ice melt chemicals to the sidewalk two and a half hours prior to the accident.  According to Precise, it applied ice melt chemicals to the entire area covered by the contract, including the sidewalk, at 5:00 a.m., three hours before Gregory Haskin's accident. (*See id.*; Petito Dep. 34:20–24.)

[3]  Fred Nizzari was never deposed.  Plaintiffs rely on the testimony of Kenneth Washington, Nizzari's supervisor, who testified about Nizzari's normal daily routine.  (Pls. Opp'n 8–9.)  However, there is no evidence that Nizzari was at work on December 21, 2009 or that, even if he was, he acted in conformity with his normal daily routine that day.

sidewalk where he slipped and fell.  (Pls. 56.1 ¶ 51.)  After his fall, Gregory Haskin called 9-1-1,

(Haskin Dep. 114:6–13), and called his son.  (Pls. 56.1 ¶ 52.)  Gregory Haskin wanted his son to

photograph the ice patch where he slipped and fell.  (*Id.*)

Kenneth Washington, the postmaster of the Post Office, arrived at the Post Office at

approximately 8:00 a.m. on December 21, 2009, and sometime before 9:00 a.m. he went outside

the Post Office to see if the sidewalk was clear.  (U.S. Def.'s Reply 56.1 ¶ 51; Washington Dep.

67:15–68:10.)  Washington did not observe any ice or dangerous conditions and did observe ice

melt chemicals on the sidewalk.  (U.S. Def.'s 56.1 ¶ 16; U.S. Def.'s Reply 56.1 ¶ 51.)  From

Sunday, December 20, 2009 through January 25, 2010, when the Post Office first learned of

Plaintiffs' complaint, the Post Office never received any complaints about the presence of ice or

snow on the sidewalk or any of the covered area.  (U.S. Def.'s Summ. J. 8; Washington Dep.

72:24–76:7, 85:6–24.)

## II.  Discussion

### a.  Standard of Review

#### i.  12(b)(1) Motion to Dismiss

"[A] district court may properly dismiss a case for lack of subject matter jurisdiction

under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it."  *Shabaj v.*

*Holder*, 704 F.3d 234, 237 (2d Cir. 2013) (alteration in original) (quoting *Aurecchione v.*

*Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)).  "'[T]he court must take all

facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,' but

'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the

pleadings inferences favorable to the party asserting it.'"  *Morrison v. Nat'l Austl. Bank Ltd.*, 547

F.3d 167, 170 (2d Cir. 2008) (alterations in original) (citations omitted), *aff'd*, 561 U.S. ---, 130

5

S. Ct. 2869 (2010).  Where the plaintiff's claim implicates the FTCA, the plaintiff must "prove subject matter jurisdiction by a preponderance of the evidence."  *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012); *see Yesina v. United States*, 911 F. Supp. 2d 217, 220 (E.D.N.Y. 2012); *Davis v. Goldstein*, No. 11-CV-3628, 2013 WL 3208369, at *3 (E.D.N.Y. June 24, 2013). "Because the FTCA creates a waiver of sovereign immunity, it is strictly construed and all ambiguities are resolved in favor of the United States."  *Yesina*, 911 F. Supp. 2d at 220; *Davis*, 2013 WL 3208369, at *3; *see Liranzo*, 690 F.3d at 84.  A court may consider matters outside of the pleadings when determining whether subject matter jurisdiction exists.  *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013); *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010); *Morrison*, 547 F.3d at 170.

### ii.   Rule 56 Summary Judgment Motion

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Kwong v. Bloomberg*, --- F.3d ---, ---, 2013 WL 3388446, at *4 (2d Cir. July 9, 2013); *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012).  The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson*, 477 U.S. at 252.  The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment; "there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Id*.  The court's function is to decide "whether, after resolving all

ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

>    **b.    Sovereign Immunity and Federal Tort Claims Act**

The United States is generally immune from suit. *United States v. Bormes*, 568 U.S. ---, ---, 133 S. Ct. 12, 16 (2012) ("Sovereign immunity shields the United States from suit absent a consent to be sued that is 'unequivocally expressed.'" (quoting *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34 (1992))). Under the FTCA, "Congress waived the United States' sovereign immunity for claims arising out of torts *committed by federal employees*" while acting within the scope of their employment. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217–18 (2008) (emphasis added); *Kuhner v. Montauk Post Office*, No. 12-CV-2318, 2013 WL 1343653, at *2 (E.D.N.Y. Apr. 4, 2013); *Leogrande v. New York*, No. 08-CV-3088, 2013 WL 1283392, at *13 (E.D.N.Y. Mar. 29, 2013); *Espinoza v. Zenk*, No. 10-CV-427, 2013 WL 1232208, at *4 (E.D.N.Y. Mar. 27, 2013). "'Employee' under the FTCA, however, specifically excludes 'any contractor with the United States.'" *Roditis v. United States*, 122 F.3d 108, 111 (2d Cir. 1997) (quoting 28 U.S.C. § 2671); *see generally Levin v. United States*, 568 U.S ---, ---, 133 S. Ct. 1224, 1228 (2013) ("The [FTCA] gives federal district courts exclusive jurisdiction over claims against the United States for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission' of federal employees acting within the scope of their employment." (quoting 28 U.S.C. § 1346(b)(1))); *Molchatsky v. United States*, 713 F.3d 159, 161–62 (2d Cir. 2013) (also quoting 28 U.S.C. § 1346(b)(1)); *Carter v. United States*, 494 F. App'x 148, 149 (2d Cir. 2012) (same). Generally, the United States is not liable for the injuries caused by the negligence of independent contractors. *Roditis*, 122 F.3d at 111 ("Thus, as a general rule, sovereign immunity precludes suits against the United States for injuries caused by

its independent contractors."); *see McCracken v. Brookhaven Sci. Assocs. LLC*, 376 F. App'x

138, 140 (2d Cir. 2010) (citing *United States v. Orleans*, 425 U.S. 807, 813–14 (1976) for the

proposition that "sovereign immunity waiver applies only to torts committed by United States

employees acting within the scope of employment, and not to independent contractors");

*Squicciarini v. United States*, No. 12-CV-2386, 2013 WL 620190, at *5 (S.D.N.Y. Feb. 15,

2013) ("[S]overeign immunity precludes suits against the United States for injuries caused by its

independent contractors."); *Yesina*, 911 F. Supp. 2d at 220 (same); *Johnson v. United States*, No.

11-CV-1035, 2012 WL 2921542, at *2 (N.D.N.Y. July 17, 2012) ("[T]he FTCA waiver of

sovereign immunity does not extend to independent contractors."); *Rosenblatt v. St. John's*

*Episcopal Hosp.*, No. 11-CV-1106, 2012 WL 294518, at *4 (E.D.N.Y. Jan. 31, 2012) ("The

FTCA defines 'employee of the Government' as 'officers or employees of any federal agency

. . . and persons acting on behalf of a federal agency in an official capacity, temporarily or

permanently in the service of the United States, whether with or without compensation.'  The

FTCA makes clear, however, that independent contractors are excluded from this definition."

(quoting 28 U.S.C. § 2671))); *Brown v. United States*, No. 10-CV-7758, 2011 WL 1676327, at

*3 (S.D.N.Y. May 3, 2011) ("When the tort is a result of the negligence of an independent

contractor, the Government cannot be held liable under the FTCA.").  "The plaintiff bears the

burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Liranzo*, 690

F.3d at 84 (citations and internal quotation marks omitted)).  "The United States' waiver of

immunity under the FTCA is to be strictly construed in favor of the government."  *Id.*

### i.  Precise was an Independent Contractor

Precise was an independent contractor who was responsible for the removal of snow and

ice from the covered area of the Post Office.  Therefore, Plaintiffs' claim falls within the

independent contractor exception to the FTCA's waiver of sovereign immunity and the Court lacks subject matter jurisdiction.  Pursuant to its contract with the USPS, Precise agreed to "furnish all labor, materials, supervision, and equipment necessary to provide snow removal, snow/ice plowing and salt/sanding services" for the covered area of the Post Office.  (Contract at 1.)  Precise also agreed to "automatically plow[] without notification when snow reache[d] two (2) inches."  (*Id.* (capitalization omitted).)  Precise further agreed that it could be called to provide snow and ice removal services even when the snowfall was less than two inches.  (*Id.*)  Precise was also required to purchase employers' liability insurance and general public liability insurance (*Id.* at 12–13.)  Courts have found similar contractors to be independent contractors.  *See, e.g.*, *Cyr v. United States*, No. 10-CV-194, 2011 WL 2489877, at *8 (D. Vt. June 21, 2011) (finding that the person who performed the work was an independent contractor when the person "provided the equipment, employees, and insurance necessary to complete the work"); *Flanagan v. United States*, 430 F. Supp. 2d 106, 112–114 (W.D.N.Y. 2006) (holding that the person who performed the work was an independent contractor where the contract provided that the contractor was responsible for labor, equipment and materials); *Fisko v. U.S. Gen. Servs. Admin.*, 395 F. Supp. 2d 57, 65–66 (S.D.N.Y. 2005) ("Finally, the Eastco Contract required Eastco to obtain and maintain liability insurance, 'a provision found by many courts to evidence that the lessee acted as an independent contractor.'").

Determining whether the United States changed the nature of the relationship with an independent contractor is governed by the "strict control test."  *Leone v. United States*, 910 F.2d 46, 49 (2d Cir. 1990) (stating that the strict control test governs the inquiry of determining the parties relationship under the FTCA); *Rosenblatt*, 2012 WL 294518, at *5 (same).  Under the strict control test, the government is only liable if it retains "control [over] the detailed physical

performance of the contract," *Leone*, 910 F.2d at 49, or "supervise[s] 'its day-to-day

operations,'" *Roditis*, 122 F.3d at 111 (quoting *Orleans*, 425 U.S. at 815). *See also Johnson*,

2012 WL 2921542, at *3 ("The relevant factors in 'distinguishing an agency from a contractor

[are] the power of the Federal Government 'to control the detailed physical performance of the

contractor,' . . . or to supervise the contractor's 'day-to-day operations.'" (quoting *Orleans*, 425

U.S. at 814–815)); *Farley v. United States*, No. 11-CV-198S, 2012 WL 713399, at *2 (W.D.N.Y.

Mar. 5, 2012) ("In making this determination, the critical element is the power of the Federal

Government 'to control the detailed physical performance of the [individual].'" (quoting

*Orleans*, 425 U.S. at 814)); *Rosenblatt*, 2012 WL 294518, at *5 (noting that "a critical element is

the power of the Federal Government to control the detailed physical performance of the

[individual]" in determining the nature of the relationship between the parties (quoting *Orleans*,

425 U.S. at 814)).

No provision in the contract between the USPS and Precise provided for the United

States to control the manner in which Precise would physically perform under the contract nor

did the contract provide for the United States to supervise the day-to-day operations of Precise.

(*See generally* Contract.)  In addition, there is no evidence in the record that the United States in

practice controlled the manner of Precise's physical performance of the contract or supervised

the day-to-day performance of the contract during its execution.  (Washington Dep. 47:12–48,

56:3–57:15.)  Washington testified that he would check to see if Precise had performed its duties

adequately by going outside to determine if the snow was removed and he would then check the

dates of snow removal against invoices from Precise.  (*Id.*)  Thus, pursuant to the contract terms

and the manner in which it was executed, Precise was an independent contractor and not an

employee of the United States.  *See Yesina*, 911 F. Supp. 2d at 221–22 (holding that the United

States was not liable because it did not "control[] the detailed physical performance of the contractor or . . . the day-to-day operations of the contractor" (citations and internal quotation marks omitted)); *Brown*, 2011 WL 1676327, at *3 (same); *cf. Farley*, 2012 WL 713399, at *4–5 (finding that Plaintiffs' FTCA claim was not barred by the independent contractor exception because the employees of the United States controlled the detailed physical performance of the contractor's work by "dictat[ing] where detainees should be held, who they should be housed with, and when they should be put in isolation").

In opposition to the United States' motion to dismiss for lack of subject matter jurisdiction, Plaintiffs assert: (1) there is no valid contract and therefore the Court has jurisdiction over this action; and (2) the government is jointly liable for Plaintiffs' injuries because Washington and Nizzari had a duty to participate in the snow removal process and were negligent in failing to inspect the sidewalk and remove the snow and ice.

### 1. The Contract is Valid

Plaintiffs argue that because Precise never signed the contract, the contract is invalid and the Court therefore has subject matter jurisdiction over this action. (Pls. Opp'n 8.) Plaintiffs make no allegations either in their 56.1 statement or in their opposition to Defendants' summary judgment motions and motions to dismiss that suggest that they dispute that the snowfall over the weekend of December 19 and 20, 2009 was more than two inches.[4] Plaintiffs do not contest that

---

[4] "Generally, a plaintiff['s] failure to respond or contest the facts set forth by the defendant[] in [its] Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Moore v. Kingsbrook Jewish Med. Ctr.*, No. 11-CV-3625, 2013 WL 3968748, at *1 n.2 (E.D.N.Y. July 30, 2013) (quoting *Young v. Nassau Univ. Med. Ctr.*, No. 10-CV-00649, 2011 WL 6748500, at *1 n.2 (E.D.N.Y. Dec. 22, 2011)); *see also Bank of America, N.A. v. Fischer*, No. 11-CV-2044, 2013 WL 685614, at *2 (E.D.N.Y. Feb. 25, 2013) (deeming admitted all material facts set forth in plaintiff's 56.1 Statement where pro se defendant failed to submit required response); Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be

Precise removed snow and ice from the covered area of the Post Office on December 19 and 20,

2009, rather they argue that Precise performed snow removal negligently.  (*Id*. at 16–25.)

Plaintiffs argue that Precise's performance was pursuant to an informal oral agreement because

Precise never signed the contract.  (Pls. Opp'n 8.)

  Under New York law, an enforceable contract exists "where the non-signing party has

accepted [the] written agreement and has acted upon it."  *Fishbein v. Miranda*, 785 F. Supp. 2d

375, 385 (S.D.N.Y. 2011) (internal quotation marks omitted) (citing *Argo Marine Sys., Inc. v.

Camar Corp.*, 755 F.2d 1006, 1011 (2d Cir. 1985)); *see also 10 Ellicott Square Court Corp. v.

Mountain Valley Indem. Co*., 634 F.3d 112, 124 (2d Cir. 2011) ("[A]n unsigned contract may be

enforceable, provided there is objective evidence establishing that the parties intended to be

bound." (quoting *Flores v. Lower E. Side Serv. Ctr., Inc*., 4 N.Y.3d 363, 368 (2005))); *Sabella v.

Scantek Med., Inc.*, No. 08-CV- 453, 2009 WL 3233703, at *18 (S.D.N.Y. Sept. 25, 2009)

("Under New York law, 'an unsigned contract may be enforceable, provided there is objective

evidence establishing that the parties intended to be bound.'" (citations omitted)); *In re Siegmund

Strauss, Inc.*, No. 13-CV-10887, 2013 WL 3784148, at *9 (Bankr. S.D.N.Y. July 17, 2013) ("An

unsigned contract may be enforceable when objective evidence establishes the mutual intent of

parties to be bound."); *Flores*, 4 N.Y.3d at 369 (holding that an "unsigned contract may be

enforceable").

  Parties can prove the existence of a contractual agreement by showing the "objective

manifestations of the intent of the parties as gathered by their expressed words and deeds."

*Asesores y Consejeros Aconsec CIA, S.A. v. Global Emerging Markets N. Am., Inc*., 841 F. Supp.

_____

served by the moving party will be deemed to be admitted for purposes of the motion unless
specifically controverted by a correspondingly numbered paragraph in the statement required to
be served by the opposing party.").

2d 762, 766 (S.D.N.Y. 2012) (quoting *Brown Bros. Elec. Contractors, Inc. v. Beam Constr. Corp.*, 41 N.Y.2d 397, 399 (1977)); *see Lloyd v. Holder*, No. 11-CV-3154, 2012 WL 1681772, at *12 (S.D.N.Y. Apr. 17, 2012) (listing partial performance as a factor that militates in favor of a finding of intent to be bound by the settlement agreement); *Katzenberg v. Commercial Kitchen Designs, Inc*., No. 09-CV-0173, 2010 WL 3613960, at *5 (E.D.N.Y. Sept. 15, 2010) (same).

In *Asesores*, the defendant corporation retained the plaintiff law firm to conduct due diligence on a company that the defendant intended to acquire.  *Asesores*, 841 F. Supp. 2d at 764. The defendant never signed the engagement letter received from the plaintiff but the plaintiff commenced and eventually completed the due diligence after defendant assured the law firm that they would sign the engagement letter.  The defendant refused to pay the law firm when the deal fell through, claiming it was not required to pay because the deal did not close.  *Id*. at 765.  The court held that there was a valid contract because the defendant accepted the contractual terms by its silence and by accepting the work performed by the plaintiff, even though the defendant never signed the engagement letter.  *Id*. at 766.

Similar to the engagement letter in *Asesores*, the Post Office's contract with Precise is a valid contract despite Precise's failure to sign the contract.  After soliciting bids, the USPS awarded the snow and ice removal contract to Precise.  (Washington Dep. 37:13–38:7.)  A contracting officer for the USPS signed and sent a contract to Precise.  (Contract at 1; Washington Dep. 38:8–10; 41:5–10.)  Precise received and accepted the terms of the contract by performing pursuant to the contract.[5]  (Washington Dep. 16:18–23; 19:11–15; 31:16–32:2.)  The contract between Precise and the Post Office explicitly states that Precise, not the Post Office,

---

[5]  Although Precise complained to an employee of the USPS about the contract's response time requirement, Precise accepted the contract by performing pursuant to the terms of the contract.  (Petito Dep. 15:24–16:15.)

was responsible for snow and ice removal if snow accumulation was greater than two inches.
(Contract at 1; U.S. Def.'s Reply 56.1 ¶ 39.)  Where snow accumulation was less than two
inches, the contract provided that the Post Office could nevertheless request that Precise remove
the snow, but it did not assign any responsibilities specifically to Precise or to the Post Office
employees.  (Pls. 56.1 ¶ 39; Contract at 1.)  Snow accumulation on December 19, 2009 and
December 20, 2009, was approximately fifteen inches and, pursuant to its contract with the Post
Office, Precise removed the snow and ice from the covered area of the Post Office.  (*Id*. ¶¶ 8, 9–
13.)  Therefore, under New York law, based on Precise's performance on December 19, 2009
and December 20, 2009, there was an enforceable contract between the United States and
Precise.

## 2.   No Joint Liability

Plaintiffs argue that the course of conduct between Precise and the United States was not
governed by the written contract but an oral agreement and this oral agreement "was not
comprehensive and exclusive to warrant summary judgment."  (Pls. Opp'n 8.)  Plaintiffs argue
that pursuant to this informal agreement, Precise and the United States remained jointly liable for
any injuries sustained by Plaintiffs because the United States had joint responsibility with Precise
to remove snow and ice and did so both when snow accumulation was below two inches and on
other occasions.  (*Id*.)  Plaintiffs argue that Washington and Nizzari had a duty, within the scope
of their employment, to participate in the snow and ice removal process and that they were
negligent by failing to inspect the sidewalk and remove snow and ice on the morning of
December 21, 2009.  (*Id*. at 8–9.)

Plaintiffs assert that Washington and Nizzari normally inspected the sidewalk after
Precise removed snow and ice from the covered area and that their actions demonstrate that they

14

not only supervised the activities of Precise, but that they also sometimes participated in the snow and ice removal process.  (*Id.*)  As the first employee to arrive at the Post Office on weekday mornings at 5:30 a.m., Nizzari would normally inspect the sidewalk to ensure that it was clear of snow and ice after a snowstorm.  (Pls. 56.1 ¶ 41.)  On the day of Gregory Haskin's accident, Washington arrived at approximately 8:00 a.m., and he visually inspected the sidewalk before 9:00 a.m. to ensure that Precise removed the snow and ice from the covered area.  (U.S. Def.'s Reply 56.1 ¶ 51.)  According to Washington, if he or Nizzari saw snow or ice, they would have removed it, (Pls. Opp'n 8–9), since the Post Office had its own snow melting chemicals and shovels for this very purpose.  (Pls. 56.1 ¶¶ 38, 43.)

First as discussed above, the Post Office clearly had an enforceable contract with Precise given that both parties performed pursuant to the contract, despite the fact that the contract was unsigned.  Thus, the Court cannot and will not disregard the terms of the contract.  The FTCA mandates that the Court must analyze the terms of the contract to determine whether the United States retained any duty for snow and ice removal.  *Yesina*, 911 F. Supp. 2d at 221 (noting that the court is required to look at the terms of the governing contract); *Johnson*, 2012 WL 2921542, at *3 (holding that "the [c]ourt must focus on the terms of the [c]ontract between" the parties in an independent contractor case); *Brown*, 2011 WL 1676327, at *3 (holding that "[a] court must review the terms of the underlying contract to determine" the relationship between the parties in a FTCA case); *Kwitek v. U.S. Postal Serv.*, 694 F. Supp. 2d 219, 224 (W.D.N.Y. 2010) (holding that the court should focus on the terms of the contract to determine the relationship between the government and the person who performed work); *Fraser v. United States*, 490 F. Supp. 2d 302, 309–10 (E.D.N.Y. 2007) (same).

Second, the United States unambiguously delegated all responsibility to Precise when snow accumulation was over two inches under the terms of the contract.  (Contract at 1.)  Pursuant to the contract, Precise was required to furnish "all labor, materials, supervision and equipment necessary" to remove snow and ice, and Precise was required to "automatically" salt or sand each time it  snowed more than two inches.  (*Id*. at 1–2.)  In addition, Precise was required to purchase employers' liability insurance and general public liability insurance.  (*Id*. at 12–13.)  Under the terms of the contract, the United States only retained some general oversight and supervisory duties to inspect the work performed by Precise.  (*Id.*)  Pursuant to the written contract, the United States would inspect Precise's job and call Precise to have Precise correct the work if not properly performed.  (*Id.*)

The Second Circuit in *Roditis* found that where "[t]he United States did not maintain control of 'the detailed physical performance of the contractor,' or supervise 'its day-to-day operations' [and] [t]he only arguable indicia of control, [was] the government's retention of a right to inspect the progress of construction, [it] does not convert a contractor into a federal employee."  *Roditis*, 122 F.3d at 111 (citations omitted).  Other courts in this Circuit have similarly held that supervising an independent contractor, as was done here, is insufficient to confer liability on the United States for the contractor's allegedly negligent actions.  *See Leone*, 910 F.2d at 50 (holding that where the United States acts "generally as an overseer," there is no liability pursuant to the FTCA jurisdiction); *Squicciarini*, 2013 WL 620190, at *4–5 (holding that the United States' periodic inspections and power to control the independent contractor's compliance with contract specifications is insufficient to confer liability pursuant to the FTCA); *Yesina*, 911 F. Supp. 2d at 221–22 (same); *Fraser*, 490 F. Supp. 2d at 311 (finding that the United States' sovereign immunity was not waived by the United States' retention of the right to

inspect their independent contractor, despite a contract term requiring the independent contractor to take corrective action upon notice from the United States about any condition which poses a serious threat to public health or safety); *Hentnik v. United States*, No. 02-CV-9498, 2003 WL 22928648, at *7 (S.D.N.Y. Dec. 10, 2003) (holding that the government employee's declaration that he "oversees construction projects to ensure compliance with contractual agreements" cannot be used to confer day-to-day supervision and control of the independent contractor on Government employees; when taken together with the contractual provisions, this declaration "must be understood to confer only broad supervisory authority" over the independent contractor).

Furthermore, courts have found that the United States may have significant oversight of a contractor and still not be liable under the FTCA. *See, e.g.*, *Gibbons v. Fronton*, 533 F. Supp. 2d 449, 454 (S.D.N.Y. 2008) ("[T]he VA defines Sterling's physicians as a 'point of entry' into the VA's non-emergency health-care system; limits the scope of the physicians' duties to primary and preventive care; strictly controls and monitors referrals made by Sterling to specialist doctors; mandates the timing of certain screening tests, such as tests for hypertension and breast cancer; processes all patient-related laboratory testing; and retains exclusive control over patient records. None of these facts, taken as true, shows day-to-day supervision of the medical care provided by Sterling's physicians."); *Fisko*, 395 F. Supp. 2d at 62 ("The retention of a right to inspect the progress of a contractor's project or the reservation of *broad supervisory powers to control a contractor's compliance with the contract's specifications* does not establish the agency relationship necessary for FTCA jurisdiction over the Government." (emphasis added)). The fact that the Post Office employees at times would engage in snow and ice removal does not change the nature of the government's relationship with Precise, since there is no evidence that

17

the United States controlled the physical performance of the contract by instructing Precise on a

daily basis how to conduct snow and ice removal.

To the extent that the United States retained a duty to remove snow under the contract,

control was only retained under circumstances where there was less than two inches of snow.

Plaintiffs have not disputed that there was more than two inches of snow on December 19 and

20, 2009.  Plaintiffs also do not dispute Defendants' assertion that on December 19 and 20, 2009,

Precise performed ice removal.  Plaintiffs only argument is that because there is testimony that

on other occasions the United States would remove snow and ice, even when they had no duty to

do so under the contract, that the United States "assumed" the duty to remove snow and ice.

(Pls. Opp'n 8–9.)  However, the case before the Court is distinguishable from the case upon

which Plaintiffs rely.  Plaintiffs rely on *McAdams v. United States*, No. 04-CV-6541, 2006 WL

1738028 (S.D.N.Y. June 22, 2006), where the court found that the government's waiver of

sovereign immunity was inapplicable.  In *McAdams*, the plaintiff suffered an injury when she

slipped and fell on ice on the sidewalk in front of the post office.  *Id.* at *1.  The post office had

an informal oral agreement to pay $60 to postal employee Sally's husband and son each time

they provided plowing and shoveling services.  However, on the morning of the plaintiff's

accident, Sally's husband and son did not plow or shovel the sidewalk.  *Id*.  If the sidewalk was

not clear, the postal employees in *McAdams* had a duty, within the scope of their employment, to

shovel the sidewalk if they were the first to arrive at the post office.  *Id*.  In *McAdams*, Sally

performed snow and ice removal when she arrived at the post office.  *Id*.  The court found that

sovereign immunity was waived because Sally was acting as an employee within the scope of

her employment rather than as an independent contractor and it was her negligent snow and ice

removal that caused the plaintiff's injury.  *Id.* at *5.  In *McAdams*, there was no question that a

18

United State employee removed snow on the day of the accident.  *Id.*  The only question before the court in *McAdams* was whether the United State employee was "acting within the scope of [her] employment [with the United States] or as an independent contractor when she cleared the sidewalk."  *Id.*

If the United States had in fact acted by removing snow or ice negligently, the law is clear that the United States would have been liable.  Here, unlike *McAdams*, there is no allegation that a United States employee actually removed snow or ice from the covered area on the day in question.  Rather, the Court is presented with a scenario in which a United States employee did not act and an independent contractor did act, all pursuant to a contract, and courts have held that under these circumstances, the United States is immune from liability.  *See Rios Colon v. United States*, No. 10-CV-1681, 2012 WL 5418868, at *3 (D.P.R. Nov. 5, 2012) ("Absent some evidence that the negligence of a federal agency or employee caused the accident, rather than that of an independent contractor, the government is entitled to summary judgment on [sovereign immunity] ground."); *see also Mack v. United States*, No. 12-CV-3090, 2012 WL 3610998, at *1 (D. Kan. Aug. 22, 2012) (holding that sovereign immunity applied when the only individuals alleged to have "personally participated in the acts that caused plaintiff's alleged injuries are" independent contractors); *Hentnik*, 2003 WL 22928648, at *5–6 (holding that the United States was immune from suit where there was a contract that delegated the responsibility to an independent contractor and there was no evidence that a United States employee acted in a way to contribute to any negligence); *Squicciarini*, 2013 WL 620190, at *5–6 (holding that where responsibility had been delegated to the independent contractor the United States could not be held liable based on a theory that it failed to act when it should have acted); *Battaglia v. Fed. Emergency Mgmt. Agency*, No. 10-CV-4311, 2012 WL 601873, at *4 (E.D. La. Feb. 23,

19

2012) (dismissing claim against the United States because the plaintiff had "not alleged negligent acts by the United States that rise above mere contract oversight"), *aff'd sub nom. Battaglia v. United States*, 495 F. App'x 440 (5th Cir. 2012).

Plaintiffs also argue that "[t]he United States, as a tenant in control of the premises including the walkway, owed to [Gregory Haskins] a duty of reasonable care commensurate with its foreseeability that persons such as [Gregory Haskins] would use the walkway for ingress and egress." (Pls. Opp'n 9.) This argument appears to rely on the assumption that the United States as the tenant of the property had a non-delegable duty. However, federal courts have consistently held that the United States never has a non-delegable duty, since finding a non-delegable duty would subject the United States to strict liability which is not permitted under the sovereign immunity doctrine and the FTCA. *See Roditis*, 122 F.3d at 111–12 ("State law nondelegable duties imposed on landowners would result, in cases such as this, in a form of strict liability against the United States for injuries caused by its independent contractors. The FTCA, however, precludes government liability absent a negligent act, and, thus, 'does not extend to liability without fault.'" (citations omitted)); *Johnson*, 2012 WL 2921542, at *5 (holding that "the fact that the United States owned or possessed the property on which [the p]laintiff was injured is — standing alone — insufficient to give the Court jurisdiction over [the p]laintiff's claim" since the United States had not waived its immunity as the negligent act was conducted by the independent contractor and not an employee of the United States); *Dingler v. United States*, No. 06-CV-181, 2008 WL 4065642, at *3 (D. Vt. Aug. 26, 2008) ("Congress did not adopt the various state court exceptions to the independent contractor rule, and state common law principles do not override the FTCA. Accordingly, even where state law imposes a nondelegable duty, a plaintiff cannot recover under the FTCA based on that duty because state

20

law cannot override the United States' sovereign immunity from suits for injuries caused by the torts of its independent contractors."); *Fisko*, 395 F. Supp. 2d at 66 (S.D.N.Y. 2005) ("To the extent that plaintiff's complaint can be construed to allege liability for non-delegable duties of landowners under state law there is no subject matter jurisdiction. The Tort Claims Act does not waive sovereign immunity as to such claims." (citations omitted)).

Here, there was a contract between the USPS and Precise that dictated that Precise had the responsibility to automatically remove snow and ice when there was snow accumulation of two inches or more. On December 19 and 20, 2009, there was snow fall of approximately 15 inches, with accumulation of more than two inches. Precise acted pursuant to the contract by removing the snow and ice and applying ice melt. Precise was therefore an independent contractor who performed services on behalf of the Post Office pursuant to the contract. Under these circumstances, the United States is not liable for any injuries allegedly caused by Precise since Precise was not an employee of the United States. Thus, the suit against the United States is barred by sovereign immunity and is dismissed.[6]

### c. State Law Claims against Andifred and Precise

Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727

---

[6] In view of the Court's decision on the motion to dismiss, the Court does not consider the United States' motion for summary judgment.

(2d Cir. 2013) (citations and internal quotation marks omitted); *see also Oneida Indian Nation of N. Y. v. Madison County*, 665 F.3d 408, 437 (2d Cir. 2011) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of [those] factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." (alteration in original) (citations omitted)).

Courts routinely decline to exercise supplemental jurisdiction where the only remaining claims are state law claims, including claims for negligence.  *See Dickerson v. Prison Health Servs. Inc.*, 495 F. App'x 154, 158 (2d Cir. 2012) ("Having properly dismissed plaintiff's federal claims, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over plaintiff's state law claims for negligent hiring and intentional infliction of emotional distress."); *Faber v. Monticello Cent. Sch. Dist.*, No. 10-CV-01812, 2013 WL 2450057, at *7 (S.D.N.Y. June 6, 2013) (declining to exercise supplemental jurisdiction over the plaintiff's state law claims, including negligence, after having "dismissed all federal claims asserted in the Complaint"); *Licorish-Davis v. Mitchell*, No. 12-CV-601, 2013 WL 2217491, at *10 n.13 (S.D.N.Y. May 20, 2013) (same); *J.E. ex rel. Edwards v. Ctr. Moriches Union Free Sch. Dist.*, 898 F. Supp. 2d 516, 560 (E.D.N.Y. 2012) (same); *Pooler v. Nassau Univ. Med. Ctr.*, 848 F. Supp. 2d 332, 351 (E.D.N.Y. 2012) (same).

Having dismissed Plaintiffs' claim against the United States, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims for negligence and loss of consortium against Andifred and Precise.

## III.  Conclusion

For the reasons discussed above, the Court grants the United States' motion to dismiss Plaintiffs' FTCA claim for lack of subject matter jurisdiction.  The Court declines to exercise

supplemental jurisdiction over Plaintiffs' state law claims against Defendants Andifred and

Precise and dismisses Plaintiffs' claims against Andifred and Precise without prejudice.

SO ORDERED:

                                               _____s/MKB_____

                                               MARGO K. BRODIE
                                               United States District Judge

Dated: September 4, 2013
        Brooklyn, New York