UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------

GREGORY HASKIN and STEPHANIE BUCK
HASKIN,

                     Plaintiffs,

        v.

UNITED STATES OF AMERICA, ANDIFRED
REALTY CORP. and PRECISE DETAILING LLC,

                     Defendants.

------------------------------------------------------------

**MEMORANDUM & ORDER**
10-CV-5089 (MKB)

MARGO K. BRODIE, United States District Judge:

       Plaintiffs Gregory Haskin and Stephanie Buck Haskin, husband and wife, bring the above-captioned action against Defendant the United States of America (the "United States") for negligence, in violation of the Federal Tort Claims Act ("FTCA"), and against Defendant Andifred Realty Corp. ("Andifred") and Precise Detailing LLC ("Precise") for negligence under New York common law. Plaintiffs seek damages for injuries sustained by Gregory Haskin when he allegedly slipped and fell outside of the Glen Head Post Office on December 21, 2009. Currently before the Court are Defendants' motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons discussed below, the Court grants Andifred's and Precise's motions for summary judgment, and denies the United States' motion for summary judgment.

I. **Background**

     a. **Factual background**

       The Court assumes familiarity with the parties and background of this action, set forth in *Haskin v. United States*, No. 10-CV-5089, 2013 WL 4761110, at *1–3 (E.D.N.Y. Sept. 4, 2013)

*vacated and remanded*, 569 F. App'x 12 (2d Cir. 2014). Additional facts necessary to decide the motions for summary judgment are presented below.

### i. The parties

At all times relevant to this action, Defendant Andifred owned the premises used for retail and office space, located at 240 Glen Head Road in Glen Head, New York.[1] (Andifred 56.1 ¶ 1; Dep. of Andifred Realty Corp. by Fred Connan dated Feb. 15, 2012, annexed to Decl. of Gregory M. LaSpina in Opp'n to Defs. Mots. for Summary Judgment ("LaSpina Decl.") as

---

[1] Plaintiffs did not submit a response to Andifred's statement of material facts pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Rule 56.1"), electing only to submit a counterstatement of material facts as to Defendant United States' Rule 56.1 statement. Similarly, Plaintiffs did not dispute several factual assertions in the United States' Rule 56.1 statement. Rule 56.1 requires a party opposing summary judgment to submit a counterstatement of facts with numbered paragraphs corresponding to those in the moving party's statement of material facts, and failure to controvert the moving party's statement of facts may lead the court to deem those facts admitted. *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible."); *Suares v. Cityscape Tours, Inc.*, --- F. App'x ---, 2015 WL 921754, at *1 (2d Cir. Mar. 5, 2015) (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)).

Additionally, Precise failed to supply the court with a statement of material facts pursuant to Rule 56.1. *See Suares*, --- F. App'x ---, 2015 WL 921754, at *1 ("Local Rule 56.1 requires a party moving for summary judgment to submit a 'short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried' and requires that each numbered paragraph be supported 'by citation to evidence' in the record."). Failure to submit a Rule 56.1 statement may result in denial of the party's motion. *See id.* (noting it was within the district court's discretion to deny plaintiff's motion for summary judgment because plaintiff failed to submit a 56.1 statement with citations to the record) (citing *Giannullo*, 322 F.3d at 140 and *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)).

Despite these procedural failures, the Court must nevertheless determine whether the moving parties have met their burden to establish that summary judgment is appropriate under the law, and that no material issue of fact remains for trial. *See Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) ("If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then 'summary judgment must be denied *even if no opposing evidentiary matter is presented.*'" (quoting *Amaker v. Foley*, 247 F.3d 677, 681 (2d Cir. 2001))). Thus, the Court will review the evidence presented to determine if each Defendant has made a sufficient showing to support its motion for summary judgment.

Ex. A[2] ("Connan Dep.") 8:22–9:14.)  The space, located in a "strip mall" type complex, is leased to the United States Postal Service ("USPS"), which operates the Glen Head Post Office ("Post Office") in that location.  (Andifred 56.1 ¶¶ 2–3; U.S. 56.1 ¶ 2; Pl. Counter 56.1 ¶ 29; *see generally* Lease Agreement between Andifred and USPS regarding 240 Glen Head Road ("Lease Agreement"), annexed to Decl. of Kevin J. Spencer in support of Andifred Mot. for Summary Judgment ("Spencer Decl.") as Ex. A.)  Andifred is an out-of-possession owner of the location, though it does provide a "handyman," Gerald "Jerry" McAree, to perform various maintenance tasks at the property and answer questions that tenants might raise.  (Andifred 56.1 ¶ 10; Connan Dep. 15:10–16:23; Dep. of Postmaster Kenneth Washington dated Feb. 15, 2012, annexed to LaSpina Decl. as Ex. B ("Washington Dep.") 73:8–74:4; Lease Agreement, annexed to Spencer Decl. as Ex. A, at ECF No. 29.)  Precise was a company that provided, among other services, snow removal and, as discussed below in greater detail, was engaged to remove snow and ice at the Post Office.  (Dep. of Anthony Petito, annexed to Schumacher Decl. as Ex. B ("Petito Dep.") 6:11–25, 9:3–16.)  Anthony Petito was the president and sole partner of Precise.  (Aff. of Anthony Petito in Support of Mot. for Summary Judgment, Docket Entry No. 62-3 ("Petito Aff.") ¶ 1.)

The Post Office provides customer service daily from Monday through Saturday,[3] beginning at 9:00 AM.  (U.S. 56.1 ¶ 3.)  On weekdays, Fred Nizzari and Jane Sloboda, USPS employees, typically arrived at the Post Office at approximately 5:15 AM and 5:30 AM,

---

[2]  Several of the depositions submitted in support of an opposition to the motions for summary judgment are annexed as exhibits to declarations from both Plaintiffs' and Defendants' counsel.  In the interest of brevity, the Court avoids parallel citations where unnecessary and cites to the document submitted by Plaintiffs where available.

[3]  The Post Office is not open on Sundays.  (U.S. 56.1 ¶ 4.)

respectively. (Pl. Counter 56.1 ¶¶ 34–35; Washington Dep. 19:19–23:5.) Nizzari typically opened the front door to the Post Office at 5:30 AM, so customers could access post office boxes located inside the lobby of the Post Office prior to the opening of customer service. (Pl. Counter 56.1 ¶¶ 31–33; Washington Dep. 23:11–14.) Typically, at 7:30 AM, Nizzari would exit the main entrance of the Post Office to collect mail from mailboxes located outside the Post Office, near its front doors. (Washington Dep. 26:9–27:15.) Between 7:30 AM and 8:00 AM, Kenneth Washington, the Postmaster of the Glen Head Post Office, would arrive. (Washington Dep. 28:23–29:5.)

Plaintiff Gregory Haskin ("Haskin"), married to Plaintiff Stephanie Buck Haskin, frequently uses the Post Office and walks through the parking lot and across the sidewalk in front of it. (U.S. 56.1 ¶¶ 17–19.)

### ii. Snow and ice removal arrangements

Plaintiffs and Andifred contend that at the time of the incident, pursuant to its lease with Andifred, the USPS was responsible for the removal of snow and ice at the Post Office. (Andifred 56.1 ¶ 4; Pl. Counter 56.1 ¶ 30; Connan Dep. 17:9–13; Aff. of Fred Connan in Support of Mot. for Summary Judgment, annexed to Spencer Decl. as Ex. G ("Connan Aff.") ¶¶4–5.) Pursuant to the terms of the lease, the USPS "is responsible for ordinary repairs to, and maintenance of the demised premises except for those repairs that are specifically made the responsibility of the Lessor in this Lease." (Lease Agreement, at ECF No. 19.) Snow removal is not listed as the Lessor's responsibility. (*Id.*) McAree, the handyman, did not perform snow and ice removal. (Andifred 56.1 ¶ 10; Connan Dep. 17:14–21.)

In late 2009, the USPS engaged Precise to perform snow and ice removal services on the Post Office property between November 15, 2009 and November 14, 2010. (*See*

Order/Solicitation/Officer/Award form ("Contract"), effective date Nov. 15, 2009, annexed to Decl. of Robert W. Schumacher in Support of U.S. Mot. for Summary Judgment ("Schmacher Decl.") as Ex. F, 1–2; Andifred 56.1 ¶ 5; U.S. Reply 56.1 ¶ 30.)  After drafting the terms of this snow and ice removal contract, the USPS signed it and sent it to Precise.  (Contract 1; Washington Dep. 38:8–10, 41:5–10.)  The contract required Precise to automatically remove snow and ice following two inches or more of snowfall, and to perform snow and ice removal when called even if it had snowed fewer than two inches.  (Contract 2; Petito Dep. 25:19–26:12; Washington Dep. 49:4–7; Petito Aff. ¶ 5.)  Petito did not immediately sign the contract for Precise, but he acknowledged receiving it and having signed a contract later.  (Contract 1; Washington Dep. 42:23–43:9; Petito Dep. 10:18–19:15, 30:9–33:24, 55:21–24.)  In December of 2009, Petito began snow removal services at the Post Office.  (U.S. 56.1 ¶¶ 5–6.)  Petito personally handled all of the snow removal at the Post Office.  (Petito Dep. 29:17–19.)

If snow removal had been performed over a weekend, on Monday mornings, Postmaster Washington would visually inspect the walkway in front of the Post Office to ensure that the snow had been removed and ice melt applied to the area.  (Andifred 56.1 ¶ 7; Pl. Counter 56.1 ¶ 40; Washington Dep. 48:2–8, 56:18–58:4.)  Postmaster Washington had also instructed Nizzari and Sloboda to ensure that, if snow had fallen over a weekend, snow removal had been performed upon their arrival to the Post Office.  (Washington Dep. 57:10–24.)  The USPS kept shovels and supplies to melt snow and ice, and employees would occasionally remove snow from the Post Office property when necessary, including when the snow removal was unsatisfactory.  (Andifred 56.1 ¶¶ 6, 8; Pl. Counter 56.1 ¶ 38; Washington Dep. 49:21–50:12, 58:5–18.)  If, upon his arrival, there was snow or ice to be removed from in front of the Post Office, Nizzari was to shovel or apply ice-melt chemical to "get to a clear path" to the mailboxes

on the exterior of the Post Office.  (Washington Dep. 58:19–59:18.)

### iii.  December 19 and December 20, 2009 snowfall

Between Saturday, December 19, 2009, and Sunday, December 20, 2009, approximately fifteen inches of snow fell outside the Post Office.  (U.S. 56.1 ¶ 8.)  At approximately 1:00 AM on Sunday morning, Petito plowed the snow from the Post Office's parking lot, cleared the sidewalk, and put ice-melt chemical on the "entire property."  (U.S. 56.1 ¶ 9.)  Petito returned and performed the same snow and ice removal process at approximately 5:00 AM, and 4:00 or 5:00 PM on Sunday. (U.S. 56.1 ¶¶ 10–11; Petito Dep. 29:20–34:19; Petito Aff. ¶ 3.)  By the morning of Monday, December 21, 2009, it was no longer snowing.  (U.S. 56.1 ¶ 20.)

### iv.  Monday, December 21, 2009

At approximately 5:00 AM on December 21, 2009, Petito visited the Post Office and Defendants contend that, at that time, he applied an ice-melt chemical — calcium chloride — to the walkways and the "entire property."[4]  (Andifred 56.1 ¶¶ 20–21; U.S. 56.1 ¶¶ 12–14; Petito Dep. 34:20–38:9.)  Petito testified that, at the time, he noted some icy spots, and applied ice-melt

---

[4]  Gregory Haskin ("Haskin") contends that he saw no salt or ice melting substance on the walkway at the time of the accident and Plaintiffs assert, based on the opinion of Plaintiffs' expert William Marletta, that if Petito had used the ice-melt chemical "only 2 ½ hours prior to the accident, the ice subject ice condition [*sic*] could not have occurred under the prevailing temperatures."  (Pl. Counter 56.1 ¶¶ 12–14.)  Andifred argues that the Marletta affidavit should be stricken because it raises, for the first time, opinions regarding alleged structural defects in the sidewalk.  (Andifred Reply Mem. 10.)  Andifred claims that it is inappropriate that "after this motion was served by Andifred Realty Corp., the [P]laintiffs had Mr. Marletta visit the site in an attempt to create a new theory of liability."  (*Id.* at 11.)  Andifred was not notified of a supplemental report concerning this new testimony, and the testimony is not contained in Marletta's original report and the expert disclosure.  (*Id.* at 11–12.)  However appropriate the opinion of this expert, whose complete testimony may not have been disclosed and who only visited the location on June 20, 2012, two and a half years after the date in question, the opinion does not squarely controvert Petito's assertion.  Petito asserts that he applied ice-melt chemical at approximately 5:00 AM, three hours prior to Haskin's accident, not two and a half hours.  (*See* Petito Dep. 34:20–24; Petito Aff. ¶ 5).

chemical to the path leading directly to the main entrance of the post office. (Petito Dep. 35:4–36:10, 37:5–38:9.) He had not been called back by USPS employees, but returned on his own notion to reapply ice-melt chemical as a "standard precaution" following the heavy snowfall. (*Id.* at 35:4–36:19.) No postal employee cleared the snow or ice that morning. (U.S. 56.1 ¶ 15.) Between 5:00 AM and 10:00 AM, no one contacted Petito to request that he return to the Post Office. (Petito Aff. ¶ 4.) When Postmaster Washington arrived at approximately 8:00 AM that morning, Nizzari and Sloboda, and other employees, were at the Post Office already. (Pl. Counter 56.1 ¶ 44.)

On December 21, 2009, Haskin arrived at the Post Office around 8:00 AM to mail Christmas cards through the mail slot in the Post Office lobby, and claims he slipped and fell on a patch of ice on the walkway in front of the Post Office door. (U.S. 56.1 ¶¶ 21–22; Andifred 56.1 ¶ 11; Pl. Counter 56.1 ¶¶ 46, 48.) While the snow had been cleared from the ground, Haskin contends that he slipped on a "thin shield of ice," which he had not seen or otherwise noticed before falling. (U.S. 56.1 ¶¶ 22–26; Andifred 56.1 ¶¶ 13–15.) Haskin contends this ice patch was approximately five feet wide; a fact that Defendants dispute as speculative. (Pl. Counter 56.1 ¶ 50; U.S. Reply 56.1 ¶ 50.) After falling, Haskin called his son to take photographs of the ice patch on which he slipped. (Pl. Counter 56.1 ¶ 51.)

No one had complained to the USPS or Andifred about the alleged icy condition prior to Haskin's fall. (Andifred 56.1 ¶¶ 16–18.) Postmaster Washington arrived at the Post Office at approximately 8:00 AM that morning, and inspected Precise's snow and ice removal at some time prior to 9:00 AM, noticing ice-melt chemical on the walkways. (U.S. Reply 56.1 ¶ 51; Washington Dep. 97:14–18.) He did not recall seeing ice, and no USPS employee reported seeing ice to him. (U.S. 56.1 ¶ 16.) Haskin is unaware of any complaints about the ice on the

day of his accident. (U.S. 56.1 ¶ 27.) From Sunday, December 20, 2009, through January 25, 2010, when the USPS first learned of Haskin's complaint, the USPS never received any complaints about the presence of ice or snow on the sidewalk or any of the covered area. (Washington Dep. 72:24–76:7, 85:6–24.)

Andifred claims that it did not "cause or create the condition that is alleged to have caused [Haskin] to fall and had no notice of its existence prior to [Haskin's] alleged accident." (Andifred 56.1 ¶ 19.) Precise claims that it had no notice of Haskin's fall until August 2011, when it was served with papers in relation to the instant suit. (Petito Aff. ¶ 5.)

### b. Procedural background

The United States moved to dismiss the Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Andifred and Precise also moved for summary judgment pursuant to Rule 56. By Memorandum and Order dated September 4, 2013, the Court granted the United States' motion to dismiss Plaintiffs' FTCA claim for lack of subject matter jurisdiction, and declined to exercise supplemental jurisdiction over Plaintiffs' state law claims against Defendants Andifred and Precise. Plaintiffs appealed the September 4, 2013 Memorandum and Order to the United States Court of Appeals for the Second Circuit. (Docket Entry No. 74.)

The Second Circuit reversed the Court's dismissal for lack of subject matter jurisdiction as premature, noting that "genuine issues of material fact existed concerning the alleged negligence of USPS employees." *Haskin v. United States*, 569 F. App'x 12, 15 (2d Cir. 2014) (citing *Logue v. United States*, 412 U.S. 521, 532–33 (1973) and *Pelchy v. United States*, 549 F. Supp. 2d 198, 204 (N.D.N.Y. 2008)). It concluded that "[a] reasonable jury could conclude,

therefore, that Haskin was injured by the negligence of USPS employees — specifically, their failure to detect and remove ice on the sidewalks surrounding the Branch, or their failure to summon Precise to remove the ice.  Under the FTCA, the district court has jurisdiction to resolve such claims."  *Id.* at 16 (citing 28 U.S.C. § 1346).  The Second Circuit remanded for further proceedings, and mandate issued on August 5, 2014.  (Docket Entry No. 76.)

On December 31, 2014, Plaintiffs requested a pre-trial conference.  (Docket Entry No. 79.)  By Order dated January 5, 2015, this Court reinstated the motions for summary judgment and granted the parties leave to file supplemental submissions in support of or in opposition to the motions on or before January 20, 2015.  Plaintiffs filed a supplemental memorandum in opposition to the motions for summary judgment on January 20, 2015.  (Pl. Supp. Mem. in Opp'n to Def. Mots. For Summary Judgment ("Supp. Opp'n Mem."), Docket Entry No. 81.)  The United States also filed a supplemental letter brief in support of its motion for summary judgment on the same date.  (U.S. Supp. Letter Br., Docket Entry No. 82.)  Precise and Andifred did not submit supplemental materials.

## II.  Discussion

### a.  Standard of review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5]  Fed. R. Civ. P. 56(a); *see also Bronzini v. Classic*

---

[5]  Plaintiffs repeatedly argue that Defendants failed to satisfy their burden under New York State's summary judgment standard to establish prima facie entitlement to summary judgment by producing evidence to "eliminate several factual issues," including whether Defendants created the snow and ice condition, did not have authority to avoid or correct the condition, and did not have notice of the condition.  (*See, e.g.*, Pl. Opp'n Mem. 16; Supp. Opp'n 7.)  Plaintiffs misunderstand Defendants' burden.

In New York State courts, a plaintiff has an initial burden to allege sufficient facts in its complaint, and on a motion for summary judgment, a defendant must make a prima facie showing of entitlement to judgment as a matter of law. *See Vasta v. Home Depot*, 811 N.Y.S.2d 671, 672 (App Div. 2006) ("In order for the defendant to establish its prima facie entitlement to judgment as a matter of law, it needed to submit evidence that it neither created the condition which allegedly caused the plaintiff to slip and fall, nor had actual or constructive notice of the allegedly dangerous condition."); *Lopez v. City of New York*, 736 N.Y.S.2d 628, 629 (App. Div. 2002) (finding summary judgment not appropriate because defendants "failed to demonstrate as a matter of law that they did not cause, create, or otherwise increase the hazardous condition on the [snowy] sidewalk"); *see also Vega v. Restani Corp.*, 18 N.Y.3d 499, 503 (2012) ("The moving party's failure to make a prima facie showing of entitlement to summary judgment requires a denial of the motion, regardless of the sufficiency of the opposing papers." (internal quotation marks and citation omitted)). Once a prima facie showing is made, the burden shifts back to the plaintiff, who must establish that there is evidence that creates a triable issue of fact. *See Franchini v. Palmieri*, 1 N.Y.3d 536, 537 (2003); *Mathey v. Metro. Transp. Auth.*, 943 N.Y.S.2d 578, 581 (App. Div. 2012).

On a motion for summary judgment in federal court, the burden is tied to the ultimate burden of proof at trial. While the moving party bears the burden of demonstrating the absence of a disputed issue of material fact, the moving party may point to a complete absence of evidence to support an essential element of the non-moving party's claim and succeed on summary judgment — unless the non-moving party produces evidence raising a question of fact. *Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 85 (2d Cir. 2006) ("A moving party is entitled to a judgment as a matter of law when the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986))); *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir. 1988); *Doona v. OneSource Holdings, Inc.*, 680 F. Supp. 2d 394, 399 (E.D.N.Y. 2010) (citing Fed. R. Civ. Pro. 56(e) and *Miner v. Clinton Cty.*, 541 F.3d 464, 471 (2d Cir. 2008)) *report and recommendation adopted at* 680 F. Supp. 2d at 396–97; *see also Hughes v. United States*, No.12-CV-5109, 2014 WL 929837, at *4 (S.D.N.Y. Mar. 7, 2014) (noting federal standard applies to negligence claims brought in federal court pursuant to the FTCA and rejecting plaintiff's argument that the government was require to proffer evidence to demonstrate when the area where plaintiff tripped was last inspected, stating "the government does not have to raise a prima facie case on the defense of lack of notice in a federal court; the plaintiff must offer some evidence tending to show actual or constructive notice in order to raise an issue of fact"); *cf. Nussbaum v. Metro-N. Commuter R.R.*, No. 14-CV-1504, 2015 WL 859565, at *2 (2d Cir. Mar. 2, 2015) ("Since there was no genuine issue of material fact regarding Metro–North's creation of the alleged dangerous condition or Metro–North's actual or constructive notice of same, the district court properly granted Metro–North's motion for summary judgment.").

Thus, Defendants in this action do not bear the burden to "eliminate" all factual issues, but rather need only point to a lack of dispute over material facts, or a lack of evidence to support Plaintiffs' claims, in order to satisfy their burden. Under this standard, no genuine issue of fact will be found "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

*Sec., L.L.C.*, 558 F. App'x 89, 89 (2d Cir. 2014); *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013); *Kwong v. Bloomberg*, 723 F.3d 160, 164–65 (2d Cir. 2013); *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012). The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Redd*, 678 F.3d at 174 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b. Negligence

Under the FTCA, the law of the state where the cause of action occurred governs the claim. *See* 28 U.S.C. § 2674; *Vidro v. United States*, 720 F.3d 148, 150 (2d Cir. 2013). The parties do not appear to dispute that New York law governs the negligence claims against Precise and Andifred. The Court thus looks to New York law in evaluating Plaintiffs' negligence claims. To prevail on a claim for negligence under New York law, a plaintiff must establish: (1) the existence of a duty owed by defendant to plaintiff; (2) a breach of that duty; and (3) "that the breach of that duty constituted a proximate cause of the injury." *Gayle v. Nat'l R.R. Passenger Corp.*, 701 F. Supp. 2d 556, 562 (S.D.N.Y. 2010) (quoting *Ingrassia v. Lividikos*, 864 N.Y.S.2d 449, 452 (App. Div. 2008)); *see also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (listing elements); *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000)

(same); *Bernstein v. Mount Ararat Cemetery Inc.*, No. 11-CV-68, 2012 WL 3887228, at *5

(E.D.N.Y. Sept. 7, 2012) (same); *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333 (1981)

(same). When the plaintiff alleges that the defendant's negligence caused the plaintiff to slip and

fall, the plaintiff must demonstrate that the defendant either created the dangerous condition or

had actual or constructive notice of the condition. *Riley v. Battery Place Car Park*, 210 F. App'x

76, 77 (2d Cir. 2006); *Gordon v. Am. Museum of Nat. Hist.*, 67 N.Y.2d 836, 837 (1986); *Fielding

v. Rachlin Mgmt. Co.*, 766 N.Y.S.2d 381, 381–82 (App. Div. 2003).

The United States argues that it did not have actual or constructive notice of the

condition. Precise and Andifred argue that they did not owe Haskin a duty that would permit

Plaintiffs to hold them liable for negligence.

### i.   United States

The United States contends that, as a matter of law, it was not negligent in merely failing

to remove all snow and ice from the sidewalk, and that it was entitled to a reasonably sufficient

time to discover and remedy the allegedly icy condition. (U.S. Mem. 10.) It argues that there is

insufficient admissible evidence in the record to demonstrate that USPS had actual or

constructive notice of the condition. (U.S. Supp. Letter Br. 2.) Plaintiffs argue that the law of

the case doctrine prevents the United States from arguing that it is entitled to summary judgment

as to Plaintiffs' negligence claim. (Supp. Opp'n Mem. 3.) Additionally, Plaintiffs argue that

triable issues of fact exist as to whether the USPS employees had sufficient notice, and acted

within a reasonable amount of time. (Pl. Opp'n Mem. 8–9; Supp. Opp'n Mem. 7–11.)

### 1.   Law of the case

On remand, a district court is bound by what is known as the "mandate rule," a branch of

the "law of the case" doctrine. *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165,

175 (2d Cir. 2014) (citing *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004)).  The rule obliges district courts, on remand, to follow the decision of the appellate court on issues both expressly and impliedly decided on appeal.  *See id.*; *Brown v. City of Syracuse*, 673 F.3d 141, 147 (2d Cir. 2012) ("This 'mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate.'" (quoting *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010))); *United States v. Fernandez*, 506 F.2d 1200, 1202 (2d Cir. 1974) ("Where a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court.")  As the name suggests, compliance with the prior rulings of the appellate court is not a matter of discretion.  *Fernandez*, 506 F.2d at 1202 (noting district court has no authority to controvert mandate even in light of new evidence); *New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599, 606 (2d Cir. 2003) (noting that the district court has no authority to depart from the mandate of the Second Circuit).  However, "a mandate is controlling only as to matters within its compass."  *New England Ins.*, 352 F.2d at 606 (internal quotation marks, citation and alteration omitted); *Somo Japan Ins. Co. of Am.*, 762 F.3d at 175 (concluding that the district court did not violate the mandate rule when it addressed, on remand, issues that were not decided in the original appeal).

The Second Circuit held that "the record contains evidence from which a reasonable jury could find that Haskin's injury resulted from the negligence of USPS employees."  *Haskin*, 569 F. App'x at 15.  The United States argues that the Second Circuit was merely addressing the question of jurisdiction, and explicitly "express[ed] no opinion on the merits of the controversy."  *See id.* at 16.  The fact that the issues were presented to the Second Circuit in a different posture

does not negate its findings, based on the same facts before the Court today, that a reasonable jury could find the USPS's negligence caused Haskin's injury. *See Kerman*, 374 F.3d at 110 ("[W]hen the court of appeals has remanded a case for trial after ruling that summary judgment in favor of a given party was inappropriate because the evidence indicated the existence of genuine issues of material fact to be resolved by the jury, the district court cannot properly, on remand, grant judgment as a matter of law to that party on the basis of trial evidence that is not substantially different."); *cf. Brown*, 673 F.3d at 147–48 (finding it permissible for the district court to hold, on remand, that defendant-employer was entitled to summary judgment because plaintiff-employee suffered no adverse employment action, when previous mandate from court of appeals only addressed whether plaintiff was similarly situated to certain other employees). However, the Second Circuit's holding does not squarely address the question of whether the United States was on notice of the alleged icy condition.[6] Under New York state law, in order to prevail on a negligence claim, a plaintiff must explicitly demonstrate that the defendant either created the condition or had notice of the condition. *See Riley*, 210 F. App'x at 77. Regardless of whether the Second Circuit's findings incorporate the notice element of Plaintiffs' claims, as discussed below, there are triable issues of fact as to whether the United States had adequate notice of the allegedly icy condition as required by New York law.

---

[6] Indeed, the Second Circuit focused on facts more directly related to the question of whether the USPS owed Plaintiffs a duty of care, and caused Plaintiffs' injury, including that the USPS "retained responsibility for inspecting the [Post Office's] sidewalks when less than two inches of snow fell" and "customarily checked the sidewalks surrounding the [Post Office] for snow and ice" and thus "[a] reasonable jury could conclude . . . that Haskin was injured by the negligence of USPS employees — specifically, their failure to detect and remove ice on the sidewalks . . . or their failure to summon Precise to remove the ice." *Haskin*, 569 F. App'x at 15–16.

## 2.  Notice

The United States also contends that there is no evidence that it had actual or constructive notice of the ice patch, which is necessary to establish a prima facie case of negligence.  (U.S. Mem. 7.)  The United States argues that Postmaster Washington, the only USPS employee who was deposed, did not notice the ice patch on the morning of December 21, 2009, nor did any of his employees report having seen ice to him.  (*Id.* at 7.)  Furthermore, the United States argues that the USPS could not be charged with constructive notice of the condition, because Petito had cleared snow and ice following the heavy snowfall, and Plaintiffs have presented no evidence as to how long the ice was on the ground prior to Haskin's fall and thus have not established that the United States did not respond to the condition within a reasonable time.  (*Id.* at 4–5.)  Plaintiffs, in addition to arguing that the law-of-the-case doctrine applies, argue that there is a genuine issue of material fact as to whether the United States was on notice.  (Pl. Opp'n Mem. 10.)  Plaintiffs further argue that the reasonableness of the amount of time the USPS had to discover the icy condition and remedy it prior to Haskin's fall is a question for the jury.  (Supp. Opp'n Mem. 9–11.)

Under New York state law, a plaintiff may demonstrate that a defendant had actual notice of a hazardous condition where, for example, a defendant's employees were present at the time of the accident or the defendant received complaints about it, such that actual knowledge can be inferred.  *See, e.g.*, *Fasolino v. Charming Stores*, 77 N.Y.2d 847, 848 (1991) (holding complaint should have been dismissed when only evidence of notice was that defendant's manager learned of a slippery condition following plaintiff's fall); *Navetta v. Onondaga Galleries Ltd. Liab. Co.*, 964 N.Y.S.2d 835, 836 (App. Div. 2013) (finding defendants did not have actual notice of the condition as they did not receive any complaints concerning the area where plaintiff fell and

were unaware of any water or other substance in that location prior to plaintiff's accident); *Pungello v. Window Network, LLC*, 958 N.Y.S.2d 729, 730 (App. Div. 2013) (defendants demonstrated prima facie entitlement to judgment as a matter of law by showing there had been no complaints about the dangerous condition prior to the accident); *Cruz v. New York City Hous. Auth.*, 939 N.Y.S.2d 55, 56 (App. Div. 2012) (same).

"To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Taylor v. United States*, 121 F.3d 86, 90 (2d Cir. 1997) (quoting *Gordon*, 67 N.Y.2d at 837); *see also Bynoe v. Target Corp.*, 548 F. App'x 709, 710 (2d Cir. 2013) (same); *Hartley v. Waldbaum, Inc.*, 893 N.Y.S.2d 272, 273 (App. Div. 2010) (same).  To demonstrate constructive notice, a plaintiff must do more than show that the defendant was generally aware of the type of condition alleged to have caused plaintiff's injury; he must show that the defendant was aware of the particular condition at issue.  *Taylor*, 121 F.3d at 90; *see Carricato v. Jefferson Valley Mall Ltd. P'ship*, 749 N.Y.S.2d 575, 576 (App. Div. 2002) ("The defendant's general awareness that water can turn into ice is legally insufficient to constitute constructive notice of the particular condition [— black ice —] that caused the plaintiff to fall." (citations omitted)); *Voss v. D&C Parking*, 749 N.Y.S.2d 76, 78 (App. Div. 2002) (finding that employee's general awareness that parking lot may have contained "patches of ice" insufficient to charge defendant "with constructive notice of the specific condition, ice concealed by mud, which caused the plaintiff's injuries").

There are insufficient facts to support a finding that any of the USPS employees were present at the time of the accident or received complaints about the icy condition, and thus a

rational jury could not find that the United States had actual notice of the condition.[7] *See Fasolino*, 77 N.Y.2d at 848. However, there are genuine disputes of fact that preclude granting summary judgment to the United States on the ground that it did not have constructive notice of the condition. There are questions of fact regarding the other conditions of the sidewalk and actions of the USPS employees, which moves this case beyond a case that relies on "pure speculation." *Cf. Simmons v. Metropolitan Life Ins. Co.*, 84 N.Y.2d 972, 973–74 (1994) (reversing Appellate Division's finding that defendant had constructive notice of icy condition as "irrational and based on pure speculation" because only testimony supporting finding was that it had snowed a week prior to the accident, and there was no evidence connecting the ice upon which plaintiff fell to that snow accumulation). There are questions as to when the ice formed on the walkway where Haskin slipped, whether the ice was visible and apparent, and ultimately whether it existed for a sufficient length of time for USPS employees to discover and remedy it. *See Gordon*, 67 N.Y.2d at 837.

As for when the ice was formed, Plaintiffs have presented evidence relating to the weather conditions on the days immediately preceding the accident, and have connected this alleged ice formation to the snowstorm. (U.S. 56.1 ¶¶ 8–10; Weather Report, annexed to LaSpina Decl. as Ex. F, 5–6.) Petitio testified that when he came to the Post Office at approximately 5:00 AM on the morning of December 21, 2009, he observed some ice patches in front of the building. (Petito Dep. 35:4–36:10, 37:5–38:9.) Furthermore, there is a question as to

---

[7] There is no evidence in the record that any of the USPS employees were present at the time of the accident, saw the ice or water on the sidewalk, or received complaints regarding the icy condition, and there is actually evidence to the contrary, (*see* U.S. 56.1 ¶¶ 16, 27; Andifred 56.1 ¶¶ 16–18). Plaintiffs assert that Nizzari was present outside the Post Office at approximately 7:30 AM and could have had notice, but since Nizzari was not deposed and thus did not testify as to what he saw, there is no evidence in the record of actual notice.

whether and to what extent ice-melt chemical was applied to the walkway. *See Ross v. Betty G.*

*Reader Revocable Trust*, 927 N.Y.S.2d 49, 51 (App. Div. 2011) (noting that a defendant may

demonstrate lack of constructive notice by producing evidence of maintenance activities on the

day of the accident, or by showing that the dangerous condition did not exist when defendant last

inspected or cleaned the area before plaintiff fell); *Goodyear v. Putnam/N. Westchester Bd. of*

*Co-op. Educ. Servs.*, 927 N.Y.S.2d 373, 374 (App. Div. 2011).  Haskin contends that he did not

see any salt or other ice-melting substances on the sidewalk at the time of the accident.  (Pl. 56.1

¶ 51.)  However, Petito asserts that he applied ice-melt chemical at 5:00 AM and that he then

invoiced the Post Office accordingly.  (Petito Dep. 35:4–36:16.)  Defendants assert that other

individuals did observe ice-melt chemicals on the sidewalk.  (*See* U.S. Reply 56.1 ¶ 51.)  Given

the weather conditions, (U.S. 56.1 ¶ 8; Pl. Counter 56.1 ¶ 47; Weather Report 8 (noting

temperatures below thirty two degrees Fahrenheit)), and the nature of ice, a rational jury could

conclude that the slippery condition had occurred within such an amount of time that the United

States could have discovered and corrected it.[8]  *See Bravo v. 564 Seneca Ave. Corp.*, 922

N.Y.S.2d 88, 90 (App. Div. 2011) (noting that although it was not clear how long dangerous

condition on staircase landing existed, it "did not happen overnight," raising a triable issue of

---

[8]  The United States relies on *Quarles v. Columbia Sussex Corp.* for the proposition that
Plaintiffs must establish how long the icy condition was present prior to Haskin's fall.  *See* 997
F. Supp. 327, 332 (E.D.N.Y. 1998) (finding no constructive notice because the record contained
no evidence as to how coffee, on which plaintiff tripped, spilled on floor and how long it had
been there, and because there were no "telltale signs supporting an inference of a long-standing
condition").  The instant case, however, is unlike a slip-and-fall resulting from a spill of some
kind, where the slippery condition may have occurred only moments before the plaintiff's fall.
Here, given the nature of ice and the weather conditions on the day of the incident, drawing all
reasonable inferences in the Plaintiffs' favor, sufficient circumstantial evidence exists that could
lead a reasonable jury to conclude that the ice had been there for a long enough time for the
USPS to discover and remedy the condition.

fact as to whether it existed for a sufficient length of time for defendant to have discovered it).

As to the visibility and apparentness of the ice, Haskin did not see the ice before he slipped on it, but he characterized it as approximately five feet wide and asserts that this ice patch would have been present when Nizzari walked outside.[9] (Pl. 56.1 ¶ 50; Pl. Opp'n Mem. 11.) The United States argues that the ice was not visible and apparent because Nizzari did not see the ice at 7:30 AM, Haskin did not see it at any point before he slipped and fell at approximately 8:00 AM, and Washington did not see any ice when he inspected the walkways at approximately 9:00 AM. Plaintiffs submitted a photograph taken after the fall, which shows snow on and surrounding the walkway. (Ex. E, annexed to LaSpina Decl.; *see also* Haskin Dep. 99:12–110:19.) *See Navetta*, 964 N.Y.S.2d at 837 (noting that defendant's manger's testimony that he observed a puddle of water 10 inches in diameter after plaintiff's fall relevant in creating issue of fact as to whether the condition was visible and apparent at the time of the incident). Furthermore, the fact that Haskin did not see any ice prior to the point at which he slipped does not definitively establish the United States' lack of notice, nor does it establish that the ice was not visible and apparent as a matter of law. *See id.* at 837 (noting that plaintiff did not notice water on floor does not establish defendants' entitlement to judgment as a matter of law on issue of whether the condition was visible and apparent); *Wade-Westbrooke v. Eshaghian*, 802 N.Y.S.2d 11, 11 (App. Div. 2005).

Viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could conclude that the United States had constructive notice of a dangerous condition that a

---

[9] Plaintiffs have not presented evidence of what Nizzari did on the morning of December 21, 2009, but they have presented evidence of Nizzari's regular practice as Postmaster Washington observed it, and of the fact that a USPS employee opened the doors to the Post Office that morning, which is sufficient to create an issue of fact as to what Nizzari or Sloboda did on that morning and whether either had observed the ice formation.

reasonable inspection would have discovered.  Accordingly, the United States' motion for summary judgment is denied.

### ii.   Precise

Precise argues that it cannot be liable to Plaintiffs for negligence because it owed Plaintiffs no duty of care.  Precise contends that its only duty was pursuant to its contract with the USPS, and that it cannot be liable in tort for harm to Plaintiffs, third-parties, "since there was no privity of contract between the parties," and because the circumstances of the December 21, 2009 incident do not fall into one of the recognized exceptions to the privity requirement. (Precise Mem. 2–3.)

### 1.   Duty of care as party to a contract

"Because a finding of negligence must be based on the breach of a duty, a threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party." *Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 177 (2d Cir. 2013) (quoting *Espinal v. Melville Snow Contractors*, 98 N.Y.2d 136, 138 (2002)).  The existence of a defendant's duty of care is, "in the first instance, a legal question for determination by the courts." *In re Lake George Tort Claims*, 461 F. App'x 39, 40 (2d Cir. 2012) (quoting *Sanchez v. New York*, 99 N.Y.2d 247, 252 (2002)); *Vumbaca v. Terminal One Grp. Ass'n L.P.*, 859 F. Supp. 2d 343, 369 (E.D.N.Y. 2012) (question of duty is a question of law for the judge).  "Generally, 'a limited contractual obligation to provide snow removal services does not render the contractor liable in tort for the personal injuries of third parties.'"  *Santos v. Deanco Servs., Inc.*, 961 N.Y.S.2d 581, 582 (App. Div. 2013) (quoting *Knox v. Sodexho Am., LLC*, 939 N.Y.S.2d 557, 558 (App. Div. 2012)); *Baker v. Buckpitt*, 952 N.Y.S.2d 666, 667–68 (App. Div. 2012); *see also In re Lake George Tort Claims*, 461 F. App'x at 40 ("Under New York law a contractual duty

alone will not give rise to tort liability in favor of a third party." (citing *Espinal*, 98 N.Y.2d at

138)); *Guzman v. Wackenhut Corp.*, 394 F. App'x 801, 803 (2d Cir. 2010) ("[A] contractor

generally does not owe an independent tort duty of care to a non-contracting third party.").

However, the New York Court of Appeals in *Espinal v. Melville Snow Contractors* recognized

three circumstances under which a contracting party may be said to have assumed a duty of care

to third parties such that it may be liable in tort:

> (1) where the contracting party, in failing to exercise reasonable
> care in the performance of his duties, launche[s] a force or
> instrument of harm; (2) where the plaintiff detrimentally relies on
> the continued performance of the contracting party's duties and (3)
> where the contracting party has entirely displaced the other party's
> duty to maintain the premises safely."

*Santos*, 961 N.Y.S.2d at 582 (quoting *Espinal*, 98 N.Y.2d at 140); *see also In re Lake George*

*Tort Claims*, 461 F. App'x at 41 (citing the *Espinal* exceptions); *Guzman*, 394 F. App'x at 803

(same); *Baker*, 952 N.Y.S.2d at 667–68 (same). The first exception[10] applies when "a defendant

who undertakes to render services and then negligently creates or exacerbates a dangerous

---

[10] Plaintiffs do not contend that the second or third exceptions apply here, and the Court finds that they do not. First, Plaintiffs have not alleged detrimental reliance on Precise's performance of its duties under the contract, and there is no evidence to support such an allegation. Second, the contract, which requires Precise to remove snow when snowfall was two inches or greater or when Precise was summoned, is expressly the kind of arrangement that the courts have found does *not* displace the other party's duty to maintain the premises. *See Espinal v. Melville Snow Contractors.*, 98 N.Y.2d 136, 141 (2002) (holding that contract requiring snow removal service to plow when snow accumulation reached three inches was "not the type of 'comprehensive and exclusive' property maintenance obligation contemplated" by previous case law); *Tamhane v. Citibank, N.A.*, 877 N.Y.S.2d 78, 81 (App. Div. 2009) (finding contract which required snow remover to come after one inch of snow had fallen, or upon request, was "not the type of comprehensive and exclusive property maintenance obligation . . . that could provide a basis for liability"); *see also Gartmann v. City of New York*, 890 N.Y.S.2d 5, 5 (App. Div. 2009) (finding no displacement when "removal contract obligated defendant to plow only after the owner asked it to [plow]"). Plaintiffs appear to concede this point in their argument as to why the United States should be liable in negligence, stating that "[t]he purported oral contract between the Post Office and Precise was not comprehensive and exclusive to warrant summary judgment." (Pl. Opp'n Mem. 8 (citing *Espinal*, 98 N.Y.2d 136).)

condition may be liable for any resulting injury." *Espinal*, 98 N.Y.2d at 141–42; *see also*

*Guzman*, 394 F. App'x at 803. "Exacerbating or creating a dangerous condition may be a more

pedestrian — or less elegant — description than launching a force or instrument of harm, but in

practical terms the criteria are the same." *Espinal*, 98 N.Y.2d at 142–43.

### A.    Contract

Plaintiffs argue that a defendant who contends it has no legal duty pursuant to a contract

must produce the contract at summary judgment, and that failure to do so justifies denial of the

motion. (Pl. Opp'n Mem. 17.) Plaintiffs further argue that because the contract between the

USPS and Precise was admittedly oral at the time Haskin fell, Precise is unable to do so and the

motion should be denied. (*Id.* at 18.)

For the reasons set forth in this Court's first decision in this action, Plaintiffs' argument

that Precise failed to submit its contract with the USPS and thus should not be considered party

to a contract, to which Plaintiffs are merely third parties, is meritless.[11] As a preliminary matter,

both Washington and Petito testified to the existence of an oral contract, which is sufficient to

establish its existence. *See Foster v. Herbert Slepoy Corp.*, 905 N.Y.S.2d 226, 228 (2010)

(noting snow removal contract was oral, proceeding under third-party contract analysis).

Second, a document memorializing that agreement was presented to this Court in support of the

motions for summary judgment. (Order/Solicitation/Officer/Award form ("Contract"), effective

date Nov. 15, 2009, annexed to Decl. of Robert W. Schumacher in Support of U.S. Mot. for

Summary Judgment ("Schmacher Decl.") as Ex. F.) Finally, Petito's testimony indicates that he

---

[11]  *See Haskin v. United States*, No. 10-CV-5089, 2013 WL 4761110, at *6–7 (E.D.N.Y. Sept. 4, 2013) (finding that Precise and USPS had entered into a valid contract), *vacated and remanded on other grounds,* 569 F. App'x 12 (2d Cir. 2014).

performed pursuant to the agreement by coming to the Post Office to clear the snow and ice, further illustrating the existence of a contract. Thus, the evidence shows that Precise and the USPS had entered into a contract to which Plaintiffs were not a party.

### B. Exceptions to third-party liability rule

Plaintiffs argue that Precise owed Plaintiffs a duty of care because it created the dangerously icy condition through its snow removal efforts. (Pl. Opp'n Mem. 18–19, 21–23.) Plaintiffs contend they have produced sufficient evidence to create a triable issue of fact as to whether Precise was negligent in its snow removal efforts, including testimony from Haskin and an affidavit from Marletta, Plaintiffs' expert. (*Id.* at 21–23.) Precise argues that it did not launch a force or instrument of harm simply through Petito's alleged failure to remove all the ice and snow from the sidewalk on Monday morning. (Precise Reply Mem. 2–4.)

A defendant who takes steps to remove snow and ice from a property and then "negligently creates or exacerbates a dangerous condition[,] may be liable for any resulting injury." *Schwint v. Bank St. Commons, LLC*, 904 N.Y.S.2d 220, 222 (App. Div. 2010) (quoting *Espinal*, 98 N.Y.2d at 141–42). Simply failing to remove all snow or ice from a location, such that some residue remains, is not sufficient to meet the "launche[s] a force or instrument of harm" standard. *Espinal*, 98 N.Y.2d at 141–42; *Henriquez v. Inserra Supermarkets, Inc.*, 933 N.Y.S.2d 304, 307 (App. Div. 2011) ("[B]y merely plowing the snow, as required by the contract, defendant's actions could not be said 'to have created or exacerbated a dangerous condition.'" (quoting *Fung v. Japan Airlines Co., Ltd.*, 9 N.Y.3d 351, 361 (2007)); *Tamhane v. Citibank, N.A.*, 877 N.Y.S.2d 78, 81 (App. Div. 2009) ("Merely plowing snow and salting, after one inch falls or on request, as required by a contract, is insufficient for a factual finding that the work either created or exacerbated a dangerous condition and is also insufficient to impose a

duty of care toward a third person.").

However, if the residue of snow removal efforts could be said to have *caused* the icy condition or increased the risk of harm to others, the contractor may be held liable in tort. *See, e.g.*, *San Marco v. Vill./Town of Mount Kisco*, 16 N.Y.3d 111, 118 (2010) (finding triable issue of fact as to whether plaintiff fell on ice created when snow piles caused by snow removal efforts melted and refroze); *Jenkins v. Related Cos., L.P.*, 979 N.Y.S.2d 581, 582 (App. Div. 2014) (finding material question of fact existed as to whether contractor created or increased the hazardous icy condition by failing to adequately sand and salt); *Rugova v. 2199 Holland Ave. Apartment Corp.*, 708 N.Y.S.2d 390, 391 (App. Div. 2000) (finding question of fact as to whether defendant's snow removal efforts exposed slippery surface made more slick by ongoing precipitation); *see also Stiver v. Good & Fair Carting & Moving, Inc.*, 9 N.Y.3d 253, 257 (2007) (holding defendant cannot be said to have launched an instrument of harm because there is no evidence that condition was made less safe). In other words, evidence in the record must support some theory as to how the defendant's behavior led to the dangerous condition; mere speculation about whether a failure to perform snow and ice removal rendered a property less safe than it was prior to removal efforts is insufficient to withstand summary judgment. *Foster*, 905 N.Y.S.2d at 229 (citing *Church v. Callanan Indus.*, 99 N.Y.2d 104, 112 (2002) and *Crosthwaite v. Acadia Realty Trust*, 879 N.Y.S.2d 554, 556 (App. Div. 2009)); *Rudloff v. Woodland Pond Condo. Ass'n*, 971 N.Y.S.2d 170, 172 (App. Div. 2013); *cf. Belmonte v. Guilderland Assocs., LLC*, 976 N.Y.S.2d 697, 698 (App. Div. 2013) (holding that summary judgment should have been denied as to snow removal contractor, because question of fact existed as to whether use of plain rock salt caused the ice formation on which plaintiff slipped and fell).

Plaintiffs' suppositions do not raise a question of fact as to whether Precise caused or

exacerbated a dangerous condition, as Precise has presented evidence that Petitio performed its snow removal duties as required by the contract with the USPS, and Plaintiffs have not sufficiently connected Precise's snow removal efforts to the formation or aggravation of the ice on the walkway. *See Fung*, 9 N.Y.3d at 360–61 (rejecting plaintiffs theory that the snow might have melted and refrozen or left a thin sheet of snow which exacerbated slippery condition; finding contractor owed no duty of care to plaintiff because contractor was simply required to plow snow, and did plow snow without applying salt or sand).

There is no evidence in the record on which a rational jury could conclude that Precise's snow plowing efforts led to a *more* dangerous icy condition than if the walkway had remained unplowed. As an initial matter, Plaintiffs do little to present any theory as to how Petito's snow removal efforts led to the icy patch, simply asserting in a variety of ways that it did. While Plaintiffs' reliance on *Urban v. City of Albany* and *San Marco v. Village/Town of Mount Kisco* suggests that Plaintiffs are arguing that Precise's snow removal efforts caused the plowed snow to melt and refreeze on the walkway, creating an icy condition rather than simply a snowy one, (*see* Pl. Opp'n Mem. 21–23), the record provides little support to that theory. Dr. Marletta asserts in his affidavit that the area was not properly cleared of snow and ice. (*See* Marletta Aff. ¶ 21.) He bases this conclusion on an evaluation of the circumstances under which application of salt and sand to ice may be appropriate, and states, quoting from a text, that chemical de-icing products are commonly available for use on sidewalks. (*Id.* ¶¶ 9–10.) He also states that if Petito had applied calcium chloride to the sidewalk two and one-half hours prior to Haskin's fall, the icy condition could not have occurred under the prevailing temperatures. (*Id.* ¶ 10.) Haskin also testified that he did not see any salt or ice-melt substance on the walkway when he slipped. Aside from contending that Precise failed to apply salt, sand or ice-melt chemical to the

walkway, Plaintiffs have failed to present any evidence connecting the failure to apply ice-melt chemical to the walkway to the creation or exacerbation of the ice on which Haskin slipped. No expert has testified as to whether the temperature rose above freezing that day, whether ice could form in that amount of time, whether the snow near the walkway — not piled by Precise's snow removal efforts, but not plowed either — could have led to a more slippery condition than one that existed without any snow at all. *Cf. San Marco*, 16 N.Y.3d at 118 (holding that triable issues of fact existed as to whether Village's snow clearance operation created ice on which plaintiff fell because testimony revealed that piles of snow, resulting from plowing, could have melted and refroze); *Urban v. City of Albany*, 933 N.Y.S.2d 457, 459 (App. Div. 2011) (finding that issues of fact existed as to whether snow removal caused icy condition when defendant's employee had piled snow onto the edge of the walkway, there was no indication that ice-melting agent was applied expert engineer testified by affidavit that given the temperatures in the days before the accident and the slope of the street, meltwater from the piles could have flowed onto the street and refroze at the point where plaintiff slipped). Similarly, there is no evidence that removing the snow made the area more slippery than it was prior to the snow removal. *Cf. Figueroa v. Lazarus Burman Assocs.*, 703 N.Y.S.2d 113, 114–15 (App. Div. 2000) (triable issue of fact as to whether contractor's plowing efforts caused ice, as there had been no further rain or snow since plowing and parties conceded that failure to salt or sand would result in more dangerous icy condition). To conclude that the snow removal caused the icy condition would require substantial gap-filling by a jury, which could only be done by pure speculation and is insufficient to defeat a motion for summary judgment. *See Scott v. Avalonbay Cmties., Inc.*, 4 N.Y.S.3d 243, 246 (App. Div. 2015) ("The affidavit of the plaintiff's expert as to the origin of the hazardous condition was speculative and conclusory and, thus, insufficient to defeat a motion for

summary judgment.") (citations omitted).

Precise was only obligated to remove snow and ice when there was more than two inches of snow or when it was called to remove it, and it has produced evidence that it conformed to this expectation. Thus, the fact that Precise may have left some ice and snow after it removed most of it does not automatically render Precise subject to third-party liability. *See Fung*, 9 N.Y.3d at 360–61; *Espinal*, 98 N.Y.2d at 141–42 (noting that a contractor is "under no obligation to monitor the weather to see if melting and refreezing would create an icy condition" and that "[b]y merely plowing the snow, [the defendant] cannot be said to have created or exacerbated a dangerous condition."). Plaintiffs have presented nothing more than speculation as to whether Precise's snow removal efforts created the ice or made the area more slippery, and thus Plaintiffs' claim against Precise cannot withstand summary judgment. *See Rudloff*, 971 N.Y.S.2d at 172 (noting that even failure to salt or sand roadway on which plaintiff fell insufficient because "plaintiffs have offered nothing more than speculation that the failure to perform that duty rendered the property less safe than it was before"). Because Precise cannot be said to have launched a force or instrument of harm against Plaintiffs, Precise owed Plaintiffs no duty of care. Therefore, the Court need not address Plaintiffs' arguments relating to whether Precise had actual or constructive notice of the condition. Precise's motion for summary judgment is granted.

### iii.  Andifred

Andifred contends that it cannot be liable to Plaintiffs for negligence because (1) as an out-of-possession owner of the property, it did not owe Plaintiffs a duty of care, and (2) as a matter of law, it was not negligent because it had no notice of the condition and did not cause or create the condition. (Andifred Mem. 9–10.) Plaintiffs argue that Andifred owed them a

statutory nondelegable duty as a property owner in the Town of Oyster Bay, and that Andifred has failed to show it did not have notice of the icy condition.[12]  (Pl. Opp'n Mem. 13–15.)

### 1.    Duty of care as out-of-possession owner

Plaintiffs argue that Andifred had a statutorily nondelegable duty, pursuant to the Town Code of the Town of Oyster Bay ("Town Code"), to remove snow and ice from its sidewalks, and being an out-of-possession landlord is not a legal defense to the failure to perform that duty. (Pl. Opp'n Mem. 14.)  Andifred argues that, as an out-of-possession owner of the property who took no responsibility for snow and ice removal, it owed Plaintiffs no duty of care.  (Andifred Mem. 5–7.)  Andifred further argues that the Town Code does not apply to the sidewalk where Haskin fell, because Haskin was not walking on a public sidewalk abutting Andifred's property, but rather a concrete walkway wholly on Andifred's property.  (Andifred Reply Mem. 2–7.)

"Under New York law, 'an out-of-possession owner will not be liable for injuries that occur on [its] premises unless it has retained control over the premises or is contractually obligated to repair or maintain the premises.'"  *Williams v. Matrix Fin. Servs. Corp.*, 158 F. App'x 301, 302 (2d Cir. 2005) (quoting *Richardson v. Yasuda Bank & Trust Co.*, 772 N.Y.S.2d 595, 595 (App. Div. 2004)); *Diaz v. Calabrese*, No. 13-CV-1531, 2014 WL 6883517, at *6 (E.D.N.Y. Dec. 4, 2014) ("[U]nder New York law, an out-of-possession landlord is not liable for personal injuries sustained on the property unless the landlord retains control over the leased premises.")  Control can be evidenced by a statutory duty to maintain the premises, by a course of conduct on the part of the landlord, or by actions which give rise to the dangerous condition

---

[12]  Plaintiffs do not appear to dispute that Andifred is an out-of-possession landlord. Plaintiffs have conceded that Andifred leased the premises at 240 Glen Head Road to the USPS, and that the United States remained responsible for operating the premises.  (Andifred 56.1 ¶¶ 2–3.)

on the property.  *See, e.g.*, *Adley v. Kan. Fried Chicken, Inc.*, 966 N.Y.S.2d 28, 29 (App. Div. 2013) ("In the absence of any evidence of a duty to remove snow and ice or that . . . the out-of-possession landlords[] were involved in creating the subject pathway in the snow, summary judgment should have been granted in their favor" because evidence indicated that landlord delegated responsibility to remove snow and ice to tenant); *Repetto v. Alblan Realty Corp.*, 948 N.Y.S.2d 655, 657 (App. Div. 2012) ("An out-of-possession landlord is not liable for injuries caused by dangerous conditions on leased premises in the absence of a statute imposing liability, a contractual provision placing the duty to repair on the landlord, or by a course of conduct by the landlord giving rise to a duty."); *Seawright v. Port Auth. of N.Y. & N.J.*, 937 N.Y.S.2d 234, 236 (App. Div. 2011) ("Liability may be imposed on an out-of-possession landlord for injuries which occur on leased premises only where 'an out-of-possession landlord has a duty imposed by statute or assumed by contract or a course of conduct.'" (citations omitted)); *Ross*, 927 N.Y.S.2d at 51 ("An out-of-possession landlord is generally not liable for the condition of the demised premises unless the landlord has a contractual obligation to maintain the premises, or right to re-enter in order to inspect or repair, and the defective condition is 'a significant structural or design defect that is contrary to a specific statutory safety provision.'" (citation omitted)).  If an out-of-possession landlord is found to have control over the subject premises, the landlord has a duty to exercise reasonable care to maintain the property in a safe condition. *Diaz*, 2014 WL 6883517, at *6 (citing *Tagle v. Jakob*, 97 N.Y.2d 165, 168 (2001)).

### A.    Contractual obligation to maintain premises

Plaintiffs do not appear to dispute that Andifred had no contractual obligation to maintain the Post Office property as it relates to snow and ice removal.  Andifred asserts, and Plaintiffs do not dispute, that the USPS was responsible for removing snow and ice at the Post Office

location, and that Andifred did not perform any snow removal services.  (*See* Andifred 56.1

¶¶ 3–4, 10.)  Furthermore, Andifred has submitted its lease agreement with the USPS, which

indicates that the USPS "is responsible for ordinary repairs to, and maintenance of the demised

premises except for those that are specifically made the responsibility of the Lessor in this lease."

(Lease, annexed to Spencer Decl. as Ex. A, at ECF No. 19.)  Snow removal is not mentioned in

the lease.  Therefore, there is no evidence that Andifred had a contractual obligation to maintain

the Post Office property, and without some other source of obligation, summary judgment is

warranted.  *See Adley*, 966 N.Y.S.2d at 29; *Ross*, 927 N.Y.S.2d at 51 (granting summary

judgment to out-of-possession landlord who retained right to re-enter the premises, as lease

contained no contractual duty to clean sidewalk where plaintiff fell).

### B.  Statutory obligation to maintain sidewalks

Plaintiffs argue that Andifred had a non-delegable duty to remove snow and ice from its

sidewalks, pursuant to the Town Code, requiring maintenance of sidewalks "in front of"

privately owned property.  (Pl. Opp'n Mem. 13.)  Andifred argues that it had no duty pursuant to

section 205-2 in this action because (1) the accident took place in Glen Head and not the Town

of Oyster Bay, (2) the accident did not occur on the public sidewalk, and (3) there was no

violation of section 205-2 because the walkway was not obstructed.

Section 205-2 of the Town Code states:

> Each owner and occupant of any house or other building, and any
> owner or person entitled to possession of any vacant lot, and any
> person having charge of any church or any public building in the
> Town shall keep the sidewalk in front of the lot or house free from
> obstruction by snow or ice and icy conditions, and shall at all times
> keep the sidewalk in good and safe repair and maintain it in a clean
> condition and free from filth, dirt, weeds or other obstructions or
> encumbrances, and such owner or occupant and each of them shall
> be liable for any injury or damage by reason of omission, failure or
> negligence to make, maintain or repair such sidewalk or for a

> violation or nonobservance of the ordinances relating to making,
> maintaining and repairing sidewalks, curbstones and gutters.

Code of Town of Oyster Bay § 205-2; *see also Holmes v. Town of Oyster Bay*, 919 N.Y.S.2d

207, 208 (noting the Town Code § 205-2 "imposes a duty on landowners to maintain the

sidewalk abutting their properties in good and safe repair and free from obstructions").  Courts

have interpreted similar statutes, requiring owners of property to keep the sidewalks safe and free

from snow, to create a non-delegable duty of care, which applies whether or not the property

owner was in possession of the property at the time.  *See James v. Blackmon*, 872 N.Y.S.2d 179,

180 (App. Div. 2009) ("Although the defendant argued that she was an out-of-possession

landlord, [where injury was caused by negligence on property abutting a public sidewalk, which

owner had duty to maintain under administrative code], this did not constitute a defense [to

negligence claim]."); *Cook v. Consolidated Edison Co. of N.Y., Inc.*, 859 N.Y.S.2d 117, 119

(App. Div. 2008) (finding that an owner who leased its property to tenant and permitted tenant to

take possession of property "was under a statutory non-delegable duty to maintain the sidewalk"

pursuant to city administrative code); *see also Gyokchyan v. City of New York*, 965 N.Y.S.2d

521, 523 (App. Div. 2013) (listing exceptions to general principal that liability for injuries

sustained on a public sidewalk falls on municipality, including violating a statute or ordinance

that imposes liability on the abutting landowner).

Andifred's first contention is meritless.  The Town of Oyster Bay is comprised of

nineteen incorporated villages and seventeen unincorporated areas, including Glen Head.  *See*

*Incorporated Villages & Unincorporated Areas,* Town of Oyster Bay,

http://oysterbaytown.com/community-resources/incorporated-villages-unincorporated-areas/ (last

visited June 12, 2015).  Thus, the Town Code applies to Glen Head.

As to Andifred's contention that the Town Code does not apply to the sidewalk on which

Haskin slipped, the evidence indicates that the accident did not occur on the public sidewalk, but on a private walkway, and section 205-2 of the Town Code does not impose a duty on Andifred to clear its private walkway of snow and ice. Section 205-2 of the Code of the Town of Oyster Bay makes private landowners responsible for the public sidewalks — *i.e.*, those owned by the municipality — that abut their property. *See Holmes*, 919 N.Y.S.2d at 208 ("Although Code of Town of Oyster Bay § 205–2 imposes a duty on landowners to maintain the sidewalk *abutting* their properties in good and safe repair and free from obstructions, this duty did not extend to the subject tree well, located in the utility strip." (emphasis added)); *Sachs v. Cty. of Nassau*, 876 N.Y.S.2d 454, 456 (App. Div. 2009) ("Town of Oyster Bay Code § 205–2 imposes tort liability on each owner and occupant of any house or other building in the Town for failing to make or negligently making a repair or performing maintenance on *abutting* sidewalks." (emphasis added)); *cf. Christian v. United States*, 859 F. Supp. 2d 468, 473–74 (E.D.N.Y. 2012) (differentiating between sidewalk adjacent to a post office, on defendant's property, and a public sidewalk abutting the property, noting that Hempstead Town Code imposing duty on property owners applied to latter).

New York courts have read similar ordinances to also require the danger to be created on property abutting a public sidewalk owned by the city of New York. *See, e.g.*, *Vucetovic v. Epsom Downs, Inc.*, 10 N.Y.3d 517, 518–19 (2008) ("[W]e conclude that a tree well is not part of the 'sidewalk' for purposes of section 7-210 of the Administrative Code of the City of New York, which imposes tort liability on property owners who fail to maintain city-owned sidewalks in a reasonably safe condition."); *Rodriguez v. Themelion Realty Corp.*, 941 N.Y.S.2d 677, 678 (App. Div. 2012) ("Although section 7–210 of the Administrative Code of the City of New York shifted liability for injuries resulting from defective sidewalks from the City to the abutting

property owners, 'pedestrian ramps are not part of the sidewalk for the purpose of imposing liability on abutting landowners pursuant to that provision.'" (citations omitted)); *Hevia v. Smithtown Auto Body of Long Island, Ltd.*, 937 N.Y.S.2d 284, 285 (App. Div. 2012) ("Code of Town of Smithtown § 245–5 requires abutting occupants [to a public sidewalk] to remove snow and ice from sidewalks and imposes tort liability upon them for injuries caused by their breach of that duty."); *Vidakovic v. City of New York*, 924 N.Y.S.2d 537, 539 (App. Div. 2011) ("'[P]edestrian ramps are not part of the sidewalk for the purpose of imposing liability on abutting landowners pursuant to that provision.").[13] Thus, if the sidewalk in question is not a public sidewalk abutting the property, then Andifred does not have a duty under the Town Code.

To support its contention that the walkway in question is not a public sidewalk abutting the property, Andifred has provided the Court with two photographs of the location, one aerial and one from the public sidewalk. (*See* Ex. B and Ex. C, annexed Spencer Reply Decl.) Both indicate that the location on which Haskin slipped was not a public sidewalk abutting the Post Office property, but rather a private walkway within the property that separates the parking lot, which Andifred owned, from the Post Office building itself. (*See id.*; *see also* Lease Agreement, at ECF No. 30 (providing site plan for the Post Office, illustrating walkway between parking lot and building).) Haskin's testimony also indicates that he was "walking from [his] car that was parked in front of the post office [and he] got out on the driver's side, walked onto the sidewalk and made a right turn and walked down towards the entrance of the [P]ost [O]ffice" when he slipped. (Haskin Dep. 86:21–87:3.) Therefore, the uncontested evidence in the record illustrates

---

[13] Plaintiffs have cited additional cases with similar provisions in other municipalities. *See James v. Blackmon*, 872 N.Y.S.2d 179, 180 (App. Div. 2009) (City of New York law dealing with property abutting public sidewalk); *Jacobs v. Vill. of Rockville Ctr.*, 838 N.Y.S.2d 597, 599 (App. Div. 2007) (Incorporated Village of Rockville Centre law dealing with property abutting public sidewalk).

that the walkway was not a public sidewalk abutting the Post Office property, but rather a sidewalk or walkway within the property, between the parking lot and building where the Post Office was located. *Cf. Vidakovic*, 924 N.Y.S.2d at 539 ("[Defendant] established its prima facie entitlement to summary judgment by submitting a photograph of the area at issue and the affidavit of its expert, which established that the area in which the plaintiff tripped was part of the pedestrian ramp."); *Holmes*, 919 N.Y.S.2d at 208 (finding tree well located in utility strip, which ran parallel to a sidewalk, was not subject to section 205-2 of the Town Code). As this is not the type of sidewalk "in front of [a] lot," *see* Town Code § 205-2, that the Town of Oyster Bay would otherwise bear responsibility for, the provision of the Town Code does not shift liability to Andifred, and thus does not create a statutory duty.[14]

### C. Course of conduct to evidence control, or causation

Plaintiffs do not argue, and there is no evidence to support the conclusion that, Andifred had any control over the property or engaged in a course of conduct that would place the obligation for snow removal on it. *See Repetto*, 948 N.Y.S.2d at 658 (granting summary judgment to out-of-possession landlord who had no obligation through statute, contract or course of conduct, to remove snow at subject property). Consequently, there is no evidence from which a reasonable jury could conclude that Andifred owed a duty of care to Plaintiffs, and thus Andifred could not have breached a duty to Plaintiffs.

### 2. Notice of dangerous condition

Absent evidence that Andifred owed Plaintiffs a duty of care, the question of whether Andifred had notice of the condition is immaterial. *See Christian*, 859 F. Supp. 2d at 475 (citing

---

[14] The Court need not address Andifred's third argument, that the walkway was not obstructed within the meaning of the Town Code.

*Celotex*, 477 U.S. at 322–23 and *Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011)).

However, assuming *arguendo* that Andifred owed Plaintiffs a duty, there is no evidence in the record to support a finding that Andifred had actual or constructive notice of the condition.

As a preliminary matter, Andifred has put forth uncontested facts that show it did not have actual notice of the icy condition. (*See* Andifred 56.1 ¶ 19.) "As to constructive notice, [i]t is well settled that an out-of-possession owner who retained the right to reenter the premises for repairs and inspections cannot be held liable under a theory of constructive notice in the absence of a significant structural or design defect that is contrary to a specific safety provision." *Torres v. W. St. Realty Co.*, 800 N.Y.S.2d 683, 685 (App. Div. 2005) (internal quotation marks omitted) (quoting *McDonald v. Riverbay Corp.*, 764 N.Y.S.2d 185 (App. Div. 2003); *Miller v. Astucci U.S. Ltd.*, No. 04-CV-2201, 2007 WL 102092, at *8 (S.D.N.Y. Jan. 16, 2007) ("Plaintiff must establish the Owner's constructive notice — which may arise where an out-of-possession landlord reserves a right under the terms of a lease to enter the premises for the purpose of inspection and maintenance or repair and a specific statutory violation exists. In such case, only a significant structural or design defect that is contrary to a specific statutory safety provision will support imposition of liability against the landlord." (internal quotation marks and citations omitted)); *see also Newsome v. Artale*, No. 09-CV-10196, 2011 WL 5172543, at *3 (S.D.N.Y. Nov. 1, 2011) ("Where a defendant is a so-called 'out-of-possession landlord', or one that has transferred possession and control of premises to a tenant, it will not be liable for injuries occurring on the premises 'unless the landlord is either contractually obligated to make repairs or maintain the premises, or has a contractual right to reenter, inspect and make needed repairs at the tenant's expense, and liability is based on a significant structural or design defect that is contrary to a specific statutory safety provision.'" (citations omitted)).

There is no evidence to support a finding that a structural defect or design contrary to a specific safety provision caused the icy condition, and therefore there is no genuine issue of fact as to whether Andifred had constructive notice of the dangerous condition.[15]  The Court grants Andifred's motion for summary judgment.

## III.  Conclusion

For the foregoing reasons, the Court denies the United States' motion for summary judgment, and grants Precise's and Andifred's motions for summary judgment in their entirety.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: June 30, 2015
       Brooklyn, New York

---

[15]  Andifred argues that there is a suggestion in Plaintiffs' expert report, which was revised and resubmitted for summary judgment, that the slope of the walkway at the location of the accident was excessive.  (Andifred Reply Mem. at ECF No. 10–16; Marletta Aff.)  Andifred argues that this evidence should be excluded as it was not disclosed as a subject on which Marletta would testify and was not included in Marletta's initial expert report. (Andifred Reply Mem. at ECF No. 10–16; Marletta Report, annexed to Spencer Reply Decl. as Ex. A, ¶¶ 8–24.) However, Plaintiffs do not rely on this portion of Marletta's affidavit in opposition to the motions for summary judgment.  (*See generally* Pl. Opp'n Mem. 12–15.)  Given Plaintiffs' apparent waiver of the defect argument, the Court declines to address the propriety of the portion of the Marletta Affidavit to which Andifred objects on this ground.